(106 So. 536)

No. 27444.

PRUYN v. GAY.

In re PRUYN.

(Nov. 30, 1925.)

*(Syllabus by Editorial Staff.)*

**1. Specific performance ☞87—Contemplated purchaser, under agreement to sell, cannot compel specific performance when, himself in default.**

A contemplated purchaser, under an agreement to sell, who is in default because of failure to make payments in accordance with terms of contract, cannot compel specific performance of such contract.

**2. Deeds ☞26—Sales; deed translative of title necessary to transfer ownership of real estate.**

Though sale of personal property is complete between parties by their mere consent, and by delivery as to third persons, neither consent, delivery, nor payment of price is sufficient to transfer ownership of real estate, but there must be a deed translative of the title.

**3. Vendor and purchaser ☞3(4)—Sales; contract held mere agreement to sell, and not sale.**

Contract containing agreement to sell on condition that "the contemplated purchaser" should pay taxes and assessments, and that failure of purchaser to make payments when due should ipso facto nullify contract, *held* a mere agreement to sell, and not a sale, though contemplated purchaser went into possession.

**4. Vendor and purchaser ☞174—Sales; contemplated purchaser failing to make payments not entitled to credit for sum received by vendor for sale of part of land.**

A contemplated purchaser, under an agreement to sell, who was in default by failure to make payments in accordance with terms of contract, was not entitled to credit on his payments for sum received by vendor for sale of part of land covered by contract.

**5. Vendor and purchaser ☞170—Sales; tender made by contemplated purchaser after defaulting in payments held too late.**

Tender by contemplated purchaser, under agreement to sell, made several months after he had defaulted in his payments, was too late.

**6. Vendor and purchaser ☞78—Sales; agreement to sell land providing for forfeiture for default held legal and enforceable.**

Agreement to sell land, providing that failure of purchaser to make payments when due shall ipso facto and as a penalty nullify and abrogate contract, and expressly making time essence of contract, *held* legal and enforceable, in view of Civ. Code, arts. 1901, 1911, 2117.

**7. Damages ☞85—Provision that payments made by purchaser to be considered as rental if purchaser defaults not inequitable or arbitrary.**

Provision in agreement to sell land, that payments made should be considered as rental for use of property, was not an inequitable or arbitrary stipulation, especially where purchaser declined offer of vendor to return money paid by him as cash portion of purchase price.

Action by Frank G. Pruyn against Gilbert Gay to have a certain contract annulled and canceled. Judgment for plaintiff was reversed by the Court of Appeal for the Parish of East Baton Rouge, and plaintiff applies for certiorari or writ of review. Judgment of Court of Appeal annulled and reversed, and judgment of district court reinstated and affirmed.

Sanders & Gottlieb, of Baton Rouge, for applicant.

James J. Bailey, Dewey J. Sanchez, and Joseph A. Loret, all of Baton Rouge, for respondent.

LAND, J. On July 10, 1918, F. G. Pruyn and Gilbert Gay entered into the following agreement:

"For and in consideration of seventeen hundred and seventy-five and no/100 dollars, of which I, F. G. Pruyn, have received in cash the sum of two hundred and no/100 dollars, the remainder of which is to be paid to me in quarter installments of forty-six and 25/100 dollars each, due respectively on the 10th day of September, 1918, and quarterly thereafter at 444 Lafayette street, Baton Rouge, La., with 8 per cent. interest on each installment from maturity until paid, I hereby agree to sell to Gilbert Gay the following described property to wit, lots 2, 3, and 4 of square 1, McGrath Heights, with improvements thereof.

"It is distinctly understood that this promise

is made upon the following conditions: First. That the contemplated purchaser shall pay all taxes and assessments of any kind that may be due on said property before they become delinquent, and all insurance promptly and punctually when they become due. The failure of said purchaser to make said payments when due shall ipso facto without demand or putting in default and as a penalty nullify and abrogate this contract; in which event all sums paid to said Pruyn shall be considered as rental for the use of said property, and any building or other improvements on said property shall remain and become the property of said Pruyn.

"The said purchaser, being here present, accepts this agreement under all the conditions above set forth." .

On August 29, 1923, plaintiff instituted suit in the district court for the parish of East Baton Rouge to have said contract annulled and canceled on the conveyance records of said parish.

Plaintiff alleges that defendant had failed to make payments in accordance with the terms of said contract, which provides that failure to pay any of its installments shall nullify said contract; that defendant was in arrears over a year in making the specified payments; that plaintiff had, upon numerous occasions, made amicable demand upon defendant, and more than once had notified defendant of his intention to cancel said contract, although this was not necessary under the contract; and that plaintiff had never acquiesced in the failure of defendant to comply with the terms of said contract, but had always insisted upon the observance of the same.

Defendant admits in his answer that he had paid only $909.50 on said contract, when the total price was $1,775, and that the last payment of $50 was made on January 3, 1923; but alleges that, although at various times said payments were made before and after they were due, no complaint was made, nor was there any attempt on the part of plaintiff to cancel or set aside the contract. Alleging his readiness to carry out the terms of said contract, defendant avers that on September 28, 1923, he made a legal tender to plaintiff of the sum of $250, and that said tender was refused. Defendant charges the plaintiff with the actual violation of the contract, in that plaintiff, without any legal proceedings, to cancel the contract, sold lot 4 of square 1, McGrath Heights, described in the contract, to Joe Pizzolo for the price of $600.

Defendant alleges that he is entitled to a credit for said sum, which was refused by plaintiff, and that if said sum of $600 be credited on said contract, that defendant would have paid over and above the amount presently due under the terms of the contract.

Defendant demands specific performance of the contract, and, reconvening for the alleged active violation of same, claims damages in the sum of $1,000; i. e., $750, as being the actual value of the lot sold by plaintiff to Pizzolo, and $250 as attorneys' fees.

Judgment was rendered in the lower court in favor of plaintiff annulling, abrogating, and canceling the contract.

Defendant appealed the case to the Court of Appeal for the parish of East Baton Rouge.

On the original hearing, the judgment was affirmed, but was reversed on rehearing, and the case is now before us for review on a writ of certiorari.

A statement of the account of defendant with plaintiff is annexed to the petition and is admitted to be correct.

The last three payments were made, April 21, 1922, $15; June 2, 1922, $10; January 3, 1923, $50.

Defendant clearly defaulted in his payments. The testimony of plaintiff shows repeated demands made by him upon defendant to comply with his contract and repeated notices given by plaintiff to defendant that he would cancel the contract unless the payments were made up to date. We find no acquiescence on the part of plaintiff in the delinquencies of the defendant as to payments. The sale of lot 4 in square 1 of McGrath Heights was not made by plaintiff to Joe Pizzolo until the 4th day of June, 1923, and the

contract was not recorded by defendant until after this sale.

The alleged tender in this case of $250 was not made until September 28, 1923, or over three months after this sale, and over eight months after the last payment made by defendant on January 3, 1923.

The sale to Pizzolo was not executed by plaintiff until after repeated notices to defendant of the intention of plaintiff to cancel the contract, by the terms of which any default as to payment of the installments ipso facto abrogated the contract.

[1] Defendant, himself being in default, cannot compel the specific performance of the contract. Joffrion v. Gumbel, 123 La. 391, 48 So. 1007.

[2, 3] The language of the contract in question is "I hereby agree to sell." It is distinctly understood that this promise is made upon the following conditions:

"First that the contemplated purchaser shall pay all taxes and assessments of any kind that may be due on said property before they become delinquent." "The failure of said purchaser to make said payments when due shall ipso facto, without demand or putting in default and as a penalty nullify and abrogate this contract."

It is clear from this language that the parties did not intend a sale, transferring title to the property, until after the payments had been made in pursuance of the terms of the contract.

It is also clear that they intended that a deed should be executed after the payments had been made.

It is immaterial that defendant went into the possession of the property immediately after the execution of the contract and remained in possession.

While the sale of personal property is complete between the parties by their mere consent, and as to third persons by delivery, yet the case is different as to real estate.

"Neither consent, nor delivery, nor payment of price suffice to transfer the ownership; there must be a deed translative of the title." Trichel v. Home Ins. Co., 155 La. 462, 99 So. 403.

The court also said in the Trichel Case:

"Our conclusion is that any agreement for the sale of real estate, which is not intended to be the final writing between the parties, but, on the contrary, to be followed by another and final deed, is a mere promise of sale, and not a sale, and does not transfer the title to said property; unless it clearly appear that the parties contemplated that the new deed should be only a confirmation of the first, and not indispensable for the transfer of title."

See, also, Campbell v. Richmond Insurance Co., 156 La. 455, 100 So. 679.

The contract in this case is clearly a mere agreement to sell and not a sale.

[4] The claim by defendant that he was entitled to a credit on his payments of $600 for the sale of lot 4 by plaintiff to Joe Pizzolo is therefore without any foundation.

[5] The tender of $250 made by defendant on September 28, 1923, was not only made too late, but was not in a sum equal to the balance due on the property, and is therefore without avail to defendant.

[6] The contract in this case is not reprobated by law. Article 1911 of the Civil Code expressly provides that:

"The debtor may be put in default in three different ways: By the terms of the contract, by the act of the creditor, or by the operation of law:

"1. By the terms of the contract, when it specifically provides that the party, failing to comply, shall be deemed to be in default by the mere act of his failure."

The present contract so provides. It also declares that:

"The failure of said purchaser to make said payments when due shall ipso facto, without demand or putting in default, and as a penalty nullify and abrogate this contract."

"A penal clause is a secondary obligation, entered into for the purpose of enforcing the performance of a primary obligation." R. C. C. art. 2117.

The primary obligation assumed by the defendant in the present contract was the payment, when falling due, of each installment of the purchase price.

Time is expressly made the essence of the contract. Necessarily, the idea or intention that defendant might obtain a further delay for the performance of his obligation to make the payments is excluded.

"Agreements legally entered into have the effect of laws on those who have formed them. They cannot be revoked, unless by mutual consent of the parties, or for causes acknowledged by law. They must be performed with good faith." R. C. C. art. 1901.

[7] That the payments made shall be considered as rental for the use of the property is not an inequitable or arbitrary stipulation. If defendant does not comply with his contract, he, should pay a reasonable sum for his occupation of the property. In this case, the evidence shows that the amounts paid and forfeited by defendant do not amount to a fair rental for the property during the period of his occupancy.

The plaintiff offered to return to the defendant the $200 paid by him as the cash portion of the purchase price when the contract was signed in amicable settlement of the differences between them, but this was declined by defendant.

It is therefore ordered that the judgment of the Court of Appeal rendered on rehearing in this case be annulled and reversed. It is now ordered that the judgment rendered by the district court of the parish of East Baton Rouge be reinstated and affirmed at the cost of defendant.