## MASTERS v. CLEVELAND.*
### No. 4874.

Court of Appeal of Louisiana. Second Circuit.

Jan. 9, 1935.

Leo Gold and Thornton, Gist & Richey, all of Alexandria, for appellant.

Hawthorn, Stafford & Pitts and J. W. Hawthorn, all of Alexandria, for appellees.

TALIAFERRO, Judge.

This is a petitory action instituted by Charles N. Masters against James W. Cleveland to have his ownership recognized, and possession delivered to him, of a tract of land containing 19.90 acres, more or less, in Rapides parish, La., fully described in the petition. The history of the ownership of the land, so far as needs be related here, and undisputed facts bearing upon the relative rights of the parties to this suit, appear to be:

That on November 13, 1918, Frederick R. Jekyll sold the land to defendant Cleveland for $2,270, of which price $567.50 was paid in cash, and five equal notes were executed to represent the balance due, one note maturing annually for the period of five years; all bearing interest and secured by mortgage and vendor's lien on the land which, at that time, was unimproved woodland. Cleveland went into possession of the land, built a residence and small barn thereon, sunk a well, and in all cleared and fenced some 14 acres of the tract. Jekyll died, leaving his wife as his only heir, and on November 28, 1921, at which time there was a balance due of $1,525.44 on said purchase price notes, at her request, and for their alleged mutual convenience, Cleveland conveyed the land to her. This sale is admitted by all parties to the suit, but it is not in the record before us. We do not know the stated consideration therein, but assume such was the balance due on the notes. Contemporaneous with the execution and delivery of this deed, a contract was entered into by and between Mrs. Jekyll and Cleveland, which was never recorded, whereby she bound and obligated herself to reconvey to him the land "with all buildings and improvements thereon," for the sum of $1,525.-44, payable $150 per year, with 6 per cent. interest from date of the contract. She agreed in the act to make warranty deed to him when this price and all interest thereon had

---

been paid to her. This contract contains the following special stipulations:

"If the party of the second part fails or neglects to meet his deferred ·payments promptly and shall let one payment become due and remain unpaid for a period of six months, this agreement shall become null and void at the option of the party of the first part and all payments made shall be forfeited to the party of the first part as liquidated damages for breach of contract.

"It is further agreed and understood that the party of the second part will pay all taxes assessed against the said property. Said taxes being paid to the party of the first part and she in turn will pay them to the Sheriff and Tax Collector of the Parish of Rapides."

It is also stipulated that said tract of land would be surveyed and that if the acreage therein was found to be less than' 22.70 acres, credit for the shortage at the rate of $100 per acre would be given on the price, to be applied against last payment or payments falling due. A survey disclosed shortage of 2.80 acres, for which credit was given. Defendant made irregular payments to Mrs. Jekyll, on account of this contract, to November 28, 1925, at which time the balance due on the principal was for $1,058.78, and thereafter only paid interest. He ceased doing this after the last payment on January 29, 1930. He also ceased paying taxes on the property after the year 1930. These were paid by Mrs. Jekyll. From time to time, she importuned him to pay the taxes against the property· and make additional payments to her on the price account, but he did not do so. On June 20, 1933, in a letter, she again urged him to pay the taxes on the place and asked him what he had been able to accomplish in regard to securing a loan against it. A loan to pay her the balance due on the contract had evidently been discussed between them previous to this time. In this letter she said: "I am giving you until January 1st, '34, to pay me, and that's plenty of time to find money some way." On September 6th, she again wrote him that she had learned that he had not applied for a loan to finish paying for the land, and again called his attention to the fact that he had not paid his 1932 taxes. On September 21st, she accompanied Cleveland to the office of the representative of the Federal Land Bank in Alexandria, La., where and when he applied for a loan of $900 on the land. At that time Mrs. Jekyll told Cleveland that she would accept $500, the accrued interest, and taxes paid by her, a total of $728, in full

settlement of the balance due her, which was then considerably in excess of this amount. She did not say how long the offer would remain open. She says it was made dependent upon his paying the cash. She unquestionably had the right to withdraw it at will. On October 5th, she conveyed the property to Masters, plaintiff, for the price of $500, payable at the rate of $20 per month, and he promptly had his deed registered. On November 8th, the Federal Land Bank approved the application of Cleveland for loan on the land, but reduced it to $350. This suit was instituted on October 20th.

Plaintiff, alleging he acquired the land from Mrs. Jekyll, also sued for loss of use of possession thereon at the rate of $15 per month and for $50 counsel fees incurred in the prosecution of this suit.

Defendant admits that he has been in the actual possession of the land in dispute since January 1, 1918, and denies that plaintiff is the owner thereof. The history of his right of ownership and possession, as we have detailed above, is fully set out in his answer. He affirmatively avers that on October 23, 1933, a friend of his, Dr. Bennett Sewall, offered to pay Mrs. Jekyll the full amount due her under the terms of her proposition to accept $500, the accrued interest, and taxes paid by her, and take up her part of the contract with defendant, but she refused to accept same, and further that he stands ready and willing to settle with Mrs. Jekyll on the basis of her proposition on September 21, 1933, now, or at any time she sees fit to accept same. He alleges additionally that he has been informed and believes that plaintiff was well aware at the time he purchased the property from Mrs. Jekyll of all the facts and circumstances alleged in his answer, and of the existence of the contract between him and Mrs. Jekyll, as he had been informed thereof by her on a prior occasion when he sought to purchase the property from her, and that he "actually, wrongfully and wilfully persuaded and induced the said Mrs. Jekyll to break her contract with respondent by selling plaintiff said property at a ridiculously low price."

Assuming the position of plaintiff in reconvention, in the event plaintiff prevails in his demands, defendant sues plaintiff to recover for value of improvements placed on said property, including $350 for clearing and putting in a state of cultivation 14 acres thereof, or a total of $1,198. He called Mrs. Jekyll in warranty to defend him in the suit, as having warranted the title of the property to him,

and alleged that in event she failed to do so, or should be unsuccessful if she did so, he should recover from her the sum of $3,468, the original purchase price of the land, plus value of improvements placed thereon by him. His prayer is in keeping with the allegations of his answer and call in warranty. He does not pray to be recognized as owner of the land.

Plaintiff moved to strike out the call in warranty for the reason and on the ground that according to defendant's own allegations, he was not the owner of the property in controversy, having only a contract for title and it not of record; that he had the right to rely upon the faith of the public records in acquiring the property from Mrs. Jekyll, who, such records disclosed, was the true owner thereof; that defendant had not the right to becloud or postpone the primary issue raised in the case by calling Mrs. Jekyll in warranty to prevent his eviction from the property; and that he should be relegated to a separate action to assert whatever rights he has against her. This motion to strike out was denied by the lower court, and on application to the Supreme Court for remedial writs, the ruling was sustained.

Mrs. Jekyll first excepted to the call in warranty served on her on the ground that no legal cause of action was disclosed thereby. It does not appear that this motion was passed on, nor that action thereon was urged or insisted upon in the lower court. It is not urged here. In her answer she joins with plaintiff in his asserted ownership of and right to the possession of the land in controversy by and through the deed she gave him. She admits she wrote the letter to defendant wherein she gave him until January 1, 1934, to pay the balance due her on the property, "but avers that one of the conditions of the extension therein granted was that defendant was to pay the taxes thereon, which he never did," but which were paid by her on September 11, after writing the letter. She denies the right of defendant to recover any amount because of the improvements placed on the land by him, or because of any payments he made on account of the purchase price thereof, and avers, as in the nature of an equitable offset to such claims, that defendant has had the use of the property for many years without making any payments thereon of any kind, character, or description, and utterly disregarded his obligations under the contract with her, notwithstanding her repeated efforts to induce him to comply therewith. She further pleads that under said contract she had the right to declare it null and void at any time a payment thereunder became due and remained so for a period of six months, and that, in such event, all payments made under the contract would be forfeited to her as liquidated damages for breach of the contract; and that having alleged on said contract, and having shown upon the face of his pleadings, that it had not been carried out and discharged, and having failed to refund the taxes paid by her on the property and refusing to make further payments on the sale price thereof over a period of years, defendant is estopped from contesting the right of plaintiff to go into possession of the property and is estopped from making any demand against her as warrantor, which estoppel she specially pleads. In all other respects, the material allegations of fact and conclusions of law alleged upon by defendant are denied.

From a judgment in favor of plaintiff recognizing him as owner of the land sued for and entitled to possession thereof, and rejecting his demands for damages and rents, and rejecting the suit and demands of defendant under his call in warranty and in all other respects, defendant appealed to this court.

Defendant made the improvements on and cleared all, or nearly all, the 14 acres now open of the tract in controversy, for which he sues for indemnification, prior to the date he conveyed same to Mrs. Jekyll. These improvements were affected by the mortgage held by her on the land and passed to her with the land by effect of the deed. Cleveland agreed to purchase back from her the land "with all the buildings and improvements thereon." Therefore, whatever other reason may be urged successfully against his right to recover the value of such improvements as against plaintiff, the fact that he had conveyed them to Mrs. Jekyll and she to plaintiff, in these circumstances, is sufficient bar to his position in this respect.

■■ Defendant complains that the trial judge erroneously excluded all testimony offered by him to establish that plaintiff knew of defendant's rights over this property by virtue of the unrecorded contract with Mrs. Jekyll, and to establish fraud and collusion between him and her in the consummation of the sale to defeat defendant's rights under the contract. The rulings complained of are correct. We find no allegation of fraud and collusion in defendant's answer. The strongest charge made by him along this line is that plaintiff "actually, wrongfully and wilfully" persuaded Mrs. Jekyll to breach the contract. This is merely a conclusion of the pleader and,

if true, is not sufficient in detail and facts to permit of admission of testimony to support it, even if there were no other good reasons to exclude such testimony. This language is equivalent to a well-pleaded allegation of fraud and collusion. However, even admitting that plaintiff had knowledge of the existence of the contract between defendant and Mrs. Jekyll, and that he persuaded her to ignore same and sell him the property described therein, defendant's position is not improved. If we concede this knowledge in plaintiff, it must be further conceded that he knew of Mrs. Jekyll's right to put an end to the contract when defendant fell into arrears in payments on the price for six months; and we may further assume she told plaintiff that defendant was in arrears as to the payments more than six months. Even if he did know of the existence of the contract, it does not follow, nor is it alleged, that he had knowledge of the alleged extension relied on by defendant.

■ Article 2266, Civil Code, provides a rule of property which is subject to few, or no, exceptions:

"All sales, contracts and judgments affecting immovable property, which shall not be so recorded, shall be utterly null and void, except between the parties thereto. The recording may be made at any time, but shall only affect third persons from the time of the recording.

"The recording shall have effect from the time when the act is deposited in the proper office, and indorsed by the proper officer."

The jurisprudence is now fully harmonius in holding that this article means what it says and should be enforced as written. McDuffie v. Walker, 125 La. 152, 51 So. 100; Otis v. Texas Company, 153 La. 385, 96 So. 1; Westwego Canal & Term. Co. v. Pizanie, 174 La. 1068, 142 So. 691; State ex rel. Hebert v. Recorder, 175 La. 94, 143 So. 15.

■ Those who purchase, or otherwise acquire rights in or to real estate, relying upon contents of the public records, and upon the faith of such, are fully protected against the effect of nonregistered instruments.

■ Plaintiff acquired good title to the property in dispute from Mrs. Jekyll, and the lower court's judgment so holding is obviously correct.

It is certain that Mrs. Jekyll had the absolute right to sell the property to Masters when she did, unless the statement in her letter to defendant of June 6th precluded her from doing so. We do not think it did. That was a simple declaration on her part, made without consideration, a mere indulgence, and was subject to her withdrawal at any time, and when she sold the property to plaintiff that act alone, as a matter of course, did terminate the indulgence and did also operate as a nullification of her contract with defendant, as therein provided, in case of his default in meeting his payments for as much as six months. Parker & Co. v. Guillot et al., 118 La. 225, 42 So. 782.

Defendant suffered no hardship, nor was he exposed to any unnecessary loss or inconvenience, nor was he induced by this indulgence to shift his position to his detriment. He was many years behind in payments on principal, four years behind in payment of interest, and had failed to pay his taxes for two years. He delayed more tnan four months, after Mrs. Jekyll advised him to do so, before applying for a loan on the property to pay her. He never tendered to her the balance due on the contract, and the nearest approach to meeting her liberal proposition to settle the debt was when Dr. Sewall offered to take up the contract, some three weeks after the sale to plaintiff, by paying her $700. She felt assured, before selling the property to plaintiff, that the Federal Land Bank would not loan enough on same to pay her off. Subsequent developments proved this to be true.

■ In view of the language of the contract, the payments made to Mrs. Jekyll by defendant could be retained by her as liquidated damages for its breach. While the contract does not say that these payments could be retained as offsetting the value of the use and occupancy of the property, yet as an equitable proposition, that would be the result. This doctrine is laid down in Pruyn v. Gay, 159 La. 981, 106 So. 536, wherein it is said:

"Agreement to sell land, providing that failure of purchaser to make payments when due shall ipso facto and as a penalty nullify and abrogate contract, and expressly making time essence of contract, held legal and enforceable, in view of Civ. Code, arts. 1901, 1911, 2117.

"Provision in agreement to sell land, that payments made should be considered as rental for use of property, was not an inequitable or arbitrary stipulation, especially where purchaser declined offer of vendor to return money paid by him as cash portion of purchase price."

For the reasons assigned, the judgment appealed from is affirmed, with costs.