162 So. 51

**MASTERS v. CLEVELAND et al.**

No. 33321.

April 29, 1935.

Rehearing Denied May 27, 1935.

Thornton, Gist & Richey and Leo Gold, all of Alexandria, for relator.

Hawthorn, Stafford & Pitts, of Alexandria, for respondents.

ROGERS, Justice.

This case is before us on a writ of review. The suit is one by Charles N. Masters against James W. Cleveland for recognition of his ownership and for delivery of possession of a small tract of land situated in Rapides parish. The facts as found by the Court of Appeal are as follows, viz.:

On November 13, 1918, Frederick R. Jekyll sold the land in dispute to the defendant Cleveland for $2,270, of which $567.50 was paid in cash, and five equal interest-bearing mortgage notes were executed to represent the balance due; one note maturing annually for the period of five years. Cleveland went into possession, built a residence and small barn thereon, sunk a well, and cleared and fenced fourteen acres of the tract. Jekyll died on November 28, 1921, leaving his wife as his only heir. At that time there was a balance due of $1,525.44 on the purchase price. At the request of Mrs. Jekyll and for the mutual convenience of the parties, Cleveland conveyed the land to her, pre-

sumably for the price of the balance due. The deed is not in the record. At the time the deed was executed Mrs. Jekyll and Cleveland entered into a separate contract, whereby Mrs. Jekyll bound herself to reconvey the property to Cleveland on the completion of payments of a stipulated sum annually. This contract was never recorded. The contract contained a clause providing that if Cleveland failed to make the payments promptly and allowed one payment to become due and unpaid the agreement became null and he forfeited all payments made as liquidated damages. It was also provided that Cleveland should pay all taxes assessed against the property. The defendant made irregular payments to Mrs. Jekyll, on account of the contract, to November 28, 1925, at which time the balance due on the principal was $1,058.78, and thereafter paid only interest to January 29, 1930. He also ceased paying taxes after the year 1930. These were paid by Mrs. Jekyll. She importuned him from time to time to pay the taxes and make additional payments on the price account, but he did not do so. On June 20, 1933, in a letter, Mrs. Jekyll again urged Cleveland to pay the taxes, and also asked him what he had been able to accomplish towards obtaining a loan against the property. In this letter she said: "I am giving you until January 1, 1934 to pay me and that's plenty of time to find money some way." On September 8, Mrs. Jekyll again wrote Cleveland that she had learned that he had not applied for a loan to finish pay-

ing for the land, and again called his attention to the fact that he had not paid his 1932 taxes. On September 21, Mrs. Jekyll accompanied Cleveland to the office of the representative of the Federal Land Bank in Alexandria, where and when he applied for a loan of $900. At that time Mrs. Jekyll told Cleveland that she would accept $500, the accrued interest and taxes paid by her, a total of $728, in full settlement of the balance due her, which was considerably in excess of that amount. She did not say how long the offer would remain open. She said it was made dependent upon Cleveland paying her cash. On October 5, Mrs. Jekyll conveyed the property to Charles N. Masters, for the price of $500, payable at the rate of $20 per month, and Masters promptly caused his deed to be registered. On November 8, the Federal Land Bank approved the application of Cleveland for a loan on the land, but reduced it to $350. The suit was filed on October 20th.

Defendant denied plaintiff's right to any recovery, and, in the alternative, reconvened for damages, alleging that plaintiff was well aware that he had purchased the property from Mrs. Jekyll, and that plaintiff "actually, wrongfully and wilfully persuaded and induced the said Mrs. Jekyll to break her contract with respondent by selling plaintiff said property at a ridiculously low price." Defendant called Mrs. Jekyll in warranty to defend him in the suit, and alleged that in the event she failed or was unsuccessful in doing so that

he recover from her $3,468, the original purchase price plus the value of the improvements. Defendant did not ask to be recognized as the owner of the property. Mrs. Jekyll first excepted to and then answered the call in warranty.

The district court decided in favor of plaintiff recognizing him as the owner and as such entitled to possession of the land, but rejected his demand for rents and damages; the court also rejected the demands of the defendant in his suit and on his call in warranty. The judgment was affirmed by the Court of Appeal.

 The Court of Appeal held that the trial judge correctly excluded all testimony sought to be offered by defendant to show that plaintiff knew of defendant's rights under his unrecorded contract with Mrs. Jekyll and to show fraud and collusion between plaintiff and Mrs. Jekyll to defeat defendant's rights. Relator complains of this holding. His complaint is untenable. As found by the Court of Appeal, there is no allegation of fraud or collusion in defendant's answer. The strongest allegation in that respect is that plaintiff "actually, wrongfully and wilfully persuaded Mrs. Jekyll to breach the contract." This is merely a conclusion of the pleader, and is wholly lacking in any showing of facts to authorize the admission of testimony to support it. Nowhere is it alleged by defendant that plaintiff by artifice, fraud, or otherwise persuaded the defendant not to place his contract of record, or

that plaintiff did anything to prevent defendant from recording it. As stated by the Court of Appeal, even if plaintiff did have knowledge of the contract, it does not follow, nor is it alleged, that he had knowledge of the alleged extension relied on by defendant.

■ We find nothing in this case which takes it out of the well-settled rule in this state that a third person can acquire a good title from the owner of record, even though knowing this owner is not the true owner. McDuffie v. Walker, 125 La. 152, 51 So. 100. Gonsoulin v. Sparrow, 150 La. 103, 90 So. 528; Westwego Canal & Term. Co. v. Pizanie, 174 La. 1068, 142 So. 691; State v. Recorder, 175 La. 94, 143 So. 15.

■ Mrs. Jekyll clearly had the right to sell the property to Masters unless she was precluded from doing so by the statements contained in her letter of June 20th. The Court of Appeal did not think she was so precluded, nor do we. As stated by the Court of Appeal (158 So. 382, 385): "That was a simple declaration on her part, made without consideration, a mere indulgence, and was subject to her withdrawal at any time, and when she sold the property to plaintiff that act alone, as a matter of course, did terminate the indulgence and did also operate as a nullification of her contract with defendant, as therein provided, in case of his default in meeting his payments for as much as six months." See Parker & Co. v. Guillot, 118 La. 223, 42 So. 782.

At the conclusion of its opinion, the Court of Appeal correctly summed up the situation in these words, viz.: "Defendant suffered no hardship, nor was he exposed to any unnecessary loss or inconvenience, nor was he induced by this indulgence to shift his position to his detriment. He was many years behind in payments on principal, four years behind in payment of interest, and had failed to pay his taxes for two years. He delayed more than four months, after Mrs. Jekyll advised him to do so, before applying for a loan on the property to pay her. He never tendered to her the balance due on the contract, and the nearest approach to meeting her liberal proposition to settle the debt was when Dr. Sewall [not the defendant] offered to take up the contract, some three weeks after the sale to plaintiff, by paying her $700. She felt assured, before selling the property to plaintiff, that the Federal Land Bank would not loan enough on same to pay her off. Subsequent developments proved this to be true."

■ We also think the Court of Appeal was correct in holding that, in view of the language of the contract, the payments made by defendant to Mrs. Jekyll could be retained by her as liquidated damages for its breach. As remarked by the Court of Appeal, "While the contract does not say that these payments could be retained as offsetting the value of the use and occupancy of the property, yet as an equitable proposition, that would be the

result." This appears to be in accordance with the doctrine announced in Pruyn v. Gay, 159 La. 981, 106 So. 536.

For the reasons assigned, the judgment of the Court of Appeal herein under review is affirmed.