300 So.2d 655 (1974)
Habeeb MONSUR, Jr., Plaintiff-Appellee,
v.
James W. THOMPSON, Jr., et al., Defendants-Appellants.
No. 4585.
Court of Appeal of Louisiana, Third Circuit.
September 11, 1974.
Rehearing Denied October 10, 1974.
*656 Gold, Hall, Hammill & Little, by Charles S. Weems, III, Alexandria, for defendant-appellant.
Stafford, Pitts & Stafford, by Grove Stafford, Sr., Alexandria, for plaintiff-appellee.
Alfred A. Mansour, Alexandria, for plaintiff-appellee.
Before FRUGÉ, CULPEPPER, and WATSON, JJ.
FRUGÉ, Judge.
This case involves a dispute over an unexercised option to purchase approximately 4,200 acres of land in LaSalle Parish. Under the agreement the plaintiff, Habeeb Monsur, Jr., acquired the right to purchase a 21/42nds interest in the property known as "Catahoula Farms" from the defendant.
The dispute centers around the cause or consideration given by Monsur for his rights under the contract. The defendants claim that the plaintiff Monsur obligated *657 himself for $56,000 on a promissory note given for the option right. The plaintiff contends that, under the agreement, he is liable only for any amounts he actually paid on the $56,000 note. The trial judge found for the plaintiff. We affirm.
In late 1970 Mr. James W. Thompson, Jr., learned that Northwestern Mutual Life Insurance Company was desirous of selling the property known as Catahoula Farms. This property consisted of some 4,200 acres of land on the banks of Catahoula Lake in LaSalle Parish. The property is adjacent to a federal goose preserve and a state game management area, and is a stopping point on the North American flyway for migrant ducks and geese. Mr. Thompson became interested in the property because he saw in it great potential for hunting. He envisioned selling undivided interests in the land to sportsmen interested in assuring their future in hunting in the central Louisiana area. He thought that the cost of the investment of these sportsmen could be defrayed through the raising of soybeans, milo, and crayfish during the appropriate seasons.
On February 16, 1971, the Northwestern Mutual Life Insurance Company sold the Catahoula Farms property to JFJ Corporation, a closely-held family corporation, owned by members of the James W. Thompson family. The actual price of this sale was $550,000, $55,000 being paid in cash, and the balance represented by a mortgage note secured by a mortgage on the subject property. James W. Thompson gave his personal guarantee for $50,000 of the remaining indebtedness. On February 22, 1971, the property was transferred to the major children of James W. Thompson and to trusts established for his minor children. The price for this sale was also $550,000. In this sale, the Thompson children and trusts specifically refused to assume the mortgage which had been granted by the JFJ Corporation.
In order to implement his plan to sell undivided interests in the property, Thompson contacted the plaintiff Monsur, who is an experienced and well-known real estate man in the Alexandria area. They discussed the project at Monsur's office, and an oral agreement was reached that Monsur would get an option to buy 21/42nds of the property for a price of $400,000. This price would enable Monsur to realize a profit of almost $100,000 upon their resale at a contemplated unit price, or to retain approximately four 1/42nd shares after covering his costs in the venture.
Subsequently, the parties made an appointment with Mr. Thompson's attorney, F. A. Little, in order to draft the instruments necessary to carry out their agreement. At this meeting, the parties talked over their previous negotiations and Mr. Little made notes on an old option form preparatory to drawing up the final written agreement. On March 24, 1971, Monsur returned to Mr. Little's office, read the final document, and signed it along with a promissory note for $56,000.
The option contract provided that Monsur would have the right to purchase a 21/42nds interest in the Catahoula Farms venture. The term of the option was two weeks, commencing September 1, 1971, and ending September 15, 1971. Subsequent to the signing of the option, Monsur was granted an extension until March 1, 1972. On February 18, 1972, Monsur notified Thompson by registered letter that he did not wish to exercise the option and demanded the return of the $56,000 note. On February 22, 1972, Thompson acknowledged Monsur's letter but refused to return the note. Thereafter, Monsur filed suit for declaratory judgment that he owed nothing on the note, and for its return. He contends that Thompson made certain material misrepresentations during the negotiations leading to the contract, and that the option contract as written provided that the only thing he would lose was any payments made on the note resulting from the sale of shares. Thompson contends that he has a right to enforce the payment of the note as it was the price paid for the option. Monsur testified at trial that he *658 questioned the propriety of signing the note, and was informed by Thompson that it was to show good faith.
Paragraph one of the contract provided:
".... for and in consideration of the price and sum of Fifty-Six Thousand and No/100 ($56,000.00) Dollars, represented herein by a promissory note made payable to bearer, bearing interest at eight (8%) per cent from 1 September 1971 due on or before 1 March 1973, they hereby grant unto HABEEB MONSUR, JR. for the period commencing 1 September 1971 and ending 15 September 1971, and subject to the conditions hereinafter set forth, the exclusive right, privilege and option to purchase for the price and sum of Four Hundred Thousand and No/100 ($400,000.00) Dollars the following described property...."
...."
Paragraph three provided:
"In the event this option is not accepted... the purchaser shall have no right or claim whatsoever to any amount of money paid on the Fifty-Six Thousand ($56,000.00) Dollar note aforedescribed...."
Article 2462 of the Civil Code recognizes option contracts:
"One may purchase the right, or option to accept or reject, within a stipulated time, an offer or promise to sell, after the purchase of such option, for any consideration therein stipulated, such offer, or promise can not be withdrawn before the time agreed upon; and should it be accepted within the time stipulated, the contract or agreement to sell, evidenced by such promise and acceptance, may be specifically enforced by either party."
The dispute in this case centers around the price or "consideration" Monsur agreed to pay for his option rights. Appellants contend that the language in paragraph one ".... for and in consideration of the price and sum of Fifty-Six Thousand and No/100 ($56,000.00) Dollars...." sets the price of the option as $56,000. They maintain that the language of paragraph three that ".... the purchaser shall have no right or claim whatsoever for any amount of money paid on the $56,000.00 note...." does not have the effect of changing the price recited in paragraph one. Appellees, on the other hand, maintain that paragraph three controls since paragraph one was expressly made "subject to the conditions hereinafter set forth."
These provisions of the contract are ambiguous. Under paragraph one the contract is a pure option for $56,000. When paragraph three is considered, it is not clear whether the price is to be $56,000 or only whatever is paid on the $56,000 note.
Where a contract is ambiguous, it is to be construed against the party who prepared it. La.Civil Code arts. 1957, 1958; Kuhn v. Stan A. Plauche Real Estate Co., 249 La. 85, 185 So.2d 210 (1966); Muse v. Metropolitan Life Ins. Co., 193 La. 605, 192 So. 72 (1939); St. Landry State Bank v. Meyers, 52 La.Ann. 1769, 28 So. 136 (1898). In this case, the contract was drawn by Thompson's attorney and the ambiguity is to be construed against them. Thus, we find that Monsur owes nothing as nothing was paid on the $56,000 note.
Appellants contend that if this court finds the contract is ambiguous, it may consider parol evidence in order to ascertain the true intent of the parties. We agree that such evidence may be considered. Gulf States Finance Corporation v. Airline Auto Sales, Inc., 248 La. 591, 181 So.2d 36 (1965); McCarthy v. Plaisance, 286 So.2d 454 (La.App. 1st Cir. 1973); Hyatt v. Hartford Accident and Indemnity Co., 225 So.2d 102 (La.App. 3rd Cir. 1969). However, parol evidence does not establish that Monsur was to be bound for the $56,000. Monsur testified that from a reading of paragraph three he understood *659 that he would get credit for any amounts paid on the $56,000 note if he exercised the option; but if he failed to exercise it, he would only forfeit anything which he had actually paid on it. Even if it was Thompson's intent that Monsur be bound for the full amount of the note, Monsur never had any such intent. As an agreement on the price is a prerequisite to the formation of a valid contract, La.Civil Code Article 2462, there was no agreement between the parties to a necessary element of the option contract and thus no contract.
For the above and foregoing reasons, the judgment of the trial court is hereby affirmed; costs to be borne by appellant.
Affirmed.