887 So.2d 91 (2004)
Tammy SEALS
v.
Larry C. SUMRALL, Cheryl Lee Sumrall, and L. & C. Sumrall Revocable Trust.
No. 2003 CA 0873.
Court of Appeal of Louisiana, First Circuit.
September 17, 2004.
*92 Richard W. Watts, Franklinton, for Plaintiff-Appellee Tammy Seals.
Charles M. Stevenson, Covington, for Defendants-Appellants Larry C. Sumrall, Cheryl Lee Sumrall, and L. & C. Sumrall Revocable Trust.
Before: CARTER, C.J., PARRO, and GUIDRY, JJ.
PARRO, J.
The buyer in a bond for deed contract sued the sellers for specific performance of the contract and for damages in an amount to which her payments allegedly exceeded the purchase price. The trial court granted judgment in her favor, and the sellers appeal. For the following reasons, we reverse and render.

Facts and Procedural History
On December 2, 1993, by an act under private signature, Larry C. Sumrall and Cheryl Lee Sumrall entered into a bond for deed contract with Chad Harris (Harris) and Tammy Seals (Seals) relative to immovable property located next door to property belonging to Seals' parents. In pertinent part, the contract provided that Harris and Seals were obligated:
to pay unto Vendors the sum of FORTY THOUSAND DOLLARS, payable at the rate of FOUR HUNDRED FORTY SIX AND 35/100 ($446.35) DOLLARS, per month, until a total of THIRTY SIX THOUSAND ($36,000.00) DOLLARS is paid in full. Said payments are to be made commencing on the 1st day of June, 1994, and thereafter on the 1st day of each month until the full sum of THIRTY SIX THOUSAND ($36,000.00) DOLLARS has been paid in full to Vendors. If, and only, Vendees promptly pay the full obligation outlined above, and further pay all tax assessments and insurance, as set forth hereafter, Vendor will, at that time, execute a sufficient deed, selling and conveying unto [Vendees] the following described real estate....
On July 19, 1995,[1] the Sumralls and Seals entered into a second bond for deed contract via authentic act relative to the same immovable property.[2] In pertinent part, *93 that document provided that Seals was obligated:
to pay unto Vendors the sum of THIRTY THREE THOUSAND EIGHT HUNDRED NINETY SEVEN AND 78/100 ($33,897.78) DOLLARS, payable at the rate of FOUR HUNDRED FORTY SIX AND 35/100 ($446.35) DOLLARS, per month, commencing on the 1st day of August, 1995, and thereafter on the 1st day of each month until the full sum of THIRTY THREE THOUSAND EIGHT HUNDRED NINETY SEVEN AND 78/100 ($33,897.78) DOLLARS has been paid in full to Vendors. If, and only [if], Vendees promptly pay the full obligation outlined above, and further pay all tax assessments and insurance, as set forth hereafter, Vendor will, at that time, execute a sufficient deed, selling and conveying unto [Vendee] the following described real estate....
On January 15, 2002, a petition for specific performance and for recovery of overpayments was filed by Seals against the Sumralls and L. & C. Sumrall Revocable Trust (collectively defendants).[3] In her petition, Seals alleged that she had made 91 payments of $446.35 totaling $40,617.85 resulting in an overpayment in the installment portion of the 1993 contract price by $6,720.07.[4] Having allegedly paid the purchase price in full, Seals sought specific performance of the issuance of a warranty deed by the defendants conveying the property described in the bond for deed contract.[5]
In their answer and reconventional demand, the defendants denied that Seals was entitled to specific performance because she had not paid the entire contract price. The defendants further urged that Seals should be estopped from denying that the contracts, by the true intent of the parties, contemplated payment by Seals of interest and principal for a term of 10 years. In their reconventional demand, the defendants alleged that the 1993 contract contemplated a purchase price of $40,000, with a down payment of $4,000 and the balance of $36,000 being paid at a rate of $446.35 per month commencing on June 1, 1994, for ten years, with interest of 8 1/2 percent.[6] Based on Seals' default by discontinuing payment in January 2002, with 30 payments still owed, the defendants sought to have the bond for deed contract judicially dissolved, to retain all amounts previously paid by Seals, and to be placed in possession of the property.
After a trial on the merits, the trial court found that the defendants intended in good faith to include, and presumed the existence of, an interest component in the bond for deed contract, in addition to the sum stated as the amount which Seals was *94 obligated to pay under the contract. However, the court noted the express terms of the contract did not include an interest rate or a number of payments. The trial court found the omission of such terms did not constitute an ambiguity or vagueness in the contract and the written contract was presumed to be complete on its face. Nonetheless, the trial court implied that any ambiguity or vagueness created by the omission of these terms was imputed to the defendants, whom the trial court found to be responsible for the drafting of the contracts.
Finding that the July 1995 contract superceded the 1993 contract, the trial court found that Seals was indebted to the defendants for a balance of $33,897.78, payable at a rate of $446.35 per month commencing August 1, 1995. Based on its belief that Seals had paid this indebtedness, the trial court signed a judgment ordering the transfer of title to the immovable property, as well as a mobile home located thereon, from the defendants to Seals. Additionally, the trial court awarded Seals $471.17, the amount by which her payments since August 1, 1995, exceeded $33,897.78. From this judgment, the defendants appealed.

Price
The Louisiana Civil Code has been construed to prohibit conditional sales under which passage of title is postponed until payment of the price. An exception to the rule against conditional sales with respect to immovables was adopted in LSA-R.S. 9:2941, the "bond for deed" legislation. A bond for deed is a contract to sell real property, in which the purchase price is to be paid by the buyer to the seller in installments and in which the seller, after payment of a stipulated sum, agrees to deliver title to the buyer. LSA-R.S. 9:2941. Because a bond for deed is a "contract to sell," we look to the Civil Code articles for the law applicable to such contract. In particular, Article 2623 provides that a contract to sell must set forth the thing and the price. With respect to the price, Article 2464 states that the price must be fixed by the parties in a sum certain or determinable through a method agreed by them.
The primary issue in this case is the price fixed by the parties. In deciding this issue, we must first look to the terms of the contract. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. LSA-C.C. art.2046. However, a doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. LSA-C.C. art.2053; see LSA-C.C. art.2055. Whether the terms of a contract are doubtful or ambiguous is a question of law. Appellate review of questions of law is simply to discern whether the trial court's interpretive decision is legally correct. Busby v. Cappaert Manufactured Housing, Inc., 01-496 (La.App. 3rd Cir.10/3/01), 799 So.2d 608, 610. If legal error is found, an appellate court is to make a de novo review. See Gonzales v. Xerox Corp., 320 So.2d 163, 165-166 (La.1975).
Focusing on the terms of the 1995 contract and without considering the 1993 contract, the trial court found that the terms relating to price were not ambiguous. In ascertaining whether the trial court was legally correct in so ruling, we note at the outset that the 1995 contract contains no language evidencing an intent by the parties to set aside the 1993 contract or to declare it to be of no effect; therefore, we deem it necessary, equitable, and appropriate under the facts of this *95 case to examine the terms of the 1993 contract, as well as the 1995 contract, to determine the intent of all the parties. The 1993 contract reflects a purchase price of $40,000; however, it seemingly provides only for the payment on an installment basis of a total of $36,000. The monthly installment payments in the amount of $446.35 were to commence on June 1, 1994. The contract did not specify the number of months for which an installment would be owing. It simply stated that monthly payments would continue until a total of $36,000 had been paid, without reference to the payment of interest or a rate of interest.
Absent the consideration of parol evidence, we find the fact that the 1993 contract did not expressly provide for the payment of the entire purchase price of $40,000 constitutes an ambiguity as to the price agreed to by the parties. For that reason, we conclude that the words of the 1993 contract relative to price are not clear and explicit. Further, ambiguity is presented by the absence of a rate of interest and/or a term for the payment of monthly installments, especially when considering the terms of the 1995 contract that was executed approximately 19 months later. Without referring to the purchase price as stated in the 1993 contract or the amounts paid in connection with their original agreement, the 1995 contract reflects a purchase price of $33,897.78 to be paid in installments at the same monthly rate provided for in the original contract. Such payments under the 1995 contract were scheduled to commence on August 1, 1995. Again, the contract did not specify the number of months for which an installment would be owing. It simply stated that monthly payments would continue until a total of $33,897.78 had been paid, without reference to the payment of interest or a rate of interest.
Based on the uncertainty in price posed by the original contract, as compounded by the 1995 contract, we conclude that the trial court was legally incorrect in finding that the terms relating to price were not ambiguous. In light of this ambiguity in the price presented by the bond for deed contracts, we find it appropriate to consider the parol evidence offered to prove the price intended by the parties. See Schroeter v. Holden, 499 So.2d 309, 311-312 (La.App. 1st Cir.1986). We are mindful that any ambiguity in this case is to be construed against the party who furnished the text,[7] which the trial court determined to be the Sumralls. However, the testimony submitted at the trial of this matter shows overwhelmingly that, at the time the parties entered into the original bond for deed contract, they intended a total purchase price of $40,000 with a down payment of $4,000. The remaining $36,000 was to be financed by the Sumralls and was to be paid at a monthly rate of $446.35 for a period of 10 years, with the first installment payment being due on June 1, 1994. Seals' testimony confirmed that the contract contemplated a down payment of $4,000 and monthly installment payments of $446.35 for a period of 10 years. Such a financing arrangement contemplated an 8.5 percent rate of interest[8] as asserted by the Sumralls and would be consistent with a principal balance of $33,897.78 as of August 1, 1995, as suggested by the 1995 contract.[9] Accordingly, we conclude the *96 trial court erred in ordering specific performance of the 1995 bond for deed contract and in making an award in favor of Seals.

Defendants' Reconventional Demand
In their appeal, the defendants have asked that their reconventional demand be granted as a result of Seals' failure to continue to make monthly installments in 2002. Initially, we note that the 1993 bond for deed contract provided:[10]
Appearers further declare that the payment of each monthly installment of FOUR HUNDRED FORTY SIX AND 35/100 ($446.35) DOLLARS by Vendees, and the payment of each tax installment, and of all insurance premiums by Vendees, is of the essence of this agreement, and that if any of the said installments, taxes or insurance premiums are not paid when due, or if Vendees shall, in any other manner, violate their convenants hereunder, then all Vendee's right under this contract shall be forfeited by them, and Vendor shall be entitled to retain all payments heretofore made by Vendees, retain all improvements placed upon the said premises without reimbursing Vendees therefor....
In case of a default by the buyer, the seller in a bond for deed contract is not entitled to retain all monies paid by the buyer as liquidated damages, despite contract provisions to that effect. Scott v. Apgar, 238 La. 29, 113 So.2d 457, 460 (1959). The reason is that such a penal clause is regarded as null and void since it is inequitable and unreasonable, and an illegal attempt to recover punitive rather than merely compensatory damages. Montz v. Theard, 01-0768 (La.App. 1st Cir.2/27/02), 818 So.2d 181, 187; Thompson v. Bullock, 236 So.2d 892, 898 (La.App. 3rd Cir.), writ refused, 256 La. 894, 240 So.2d 231 (1970). On the other hand, where the buyer has gone into possession, the seller is generally entitled to recover the fair rental value of the premises. Scott, 113 So.2d at 461; see Ekman v. Vallery, 185 La. 488, 169 So. 521, 522 (1936); Farthing v. Neely, 129 So.2d 224, 238 (La.App. 3rd Cir.1961) (on rehearing). If the contract expressly provides for the forfeited payments to be considered as rental, such a provision will be enforced when the evidence reflects such payments are not in excess of the fair rental value of the property.[11]Pruyn v. Gay, 159 La. 981, 106 So. 536, 538 (1925). However, the contract did not provide for retention of these amounts as rental, nor does the record reflect the fair rental value of the property in question. Furthermore, the defendants have not sought recovery in their reconventional demand of the fair rental value of the premises.
Moreover, we note that in their brief to this court, the defendants based their right to judicial dissolution on LSA-C.C. art.2013.[12] Article 2013 provides:
When the obligor fails to perform, the obligee has a right to the judicial dissolution of the contract or, according to the circumstances, to regard the contract as dissolved. In either case, the obligee may recover damages.
In an action involving judicial dissolution, the obligor who failed to perform may be granted, according to the circumstances, *97 an additional time to perform.
Under the provisions of LSA-C.C. art.2013, the decision to allow the dissolution or not, or of granting further time or not, is left to the court, so that the dissolution of the contract never does become a matter of absolute right on the part of the obligee. See Watson v. Feibel, 139 La. 375, 71 So. 585, 591 (1916). In any action involving judicial dissolution, whether brought by an obligee or by an obligor who complains that the obligee has wrongly declared the contract dissolved, the obligor who has failed to perform may be granted additional time to do so. Whether to grant such additional time is a matter for the court to determine in light of the circumstances of the individual case, including the good faith vel non of the obligor, and whether the obligor has a valid excuse for his failure. LSA-C.C. art.2013, Revision Comment  1984, comment (e).
The defendants conceded that Seals continuously made payments on the contracts through the end of 2001 and then stopped (with two-and-a-half years of payments remaining under the contracts) only in connection with the filing of this suit to have her contractual obligations defined by the court. Considering the ambiguity found in the price of these bond for deed contracts and based on the power given to this court under Article 2013, we decline to allow dissolution of the contracts in question in favor of the defendants and instead afford Seals additional time to perform.
In particular, we feel constrained to follow the mandate of LSA-R.S. 9:2945, which provides in pertinent part:
A. If the buyer under a bond for deed contract shall fail to make the payments in accordance with its terms and conditions, the seller, at his option, may have the bond for deed cancelled by proper registry in the conveyance records, provided he has first caused the escrow agent to serve notice upon the buyer, by registered or certified mail, return receipt requested, at his last known address, that unless payment is made as provided in the bond for deed within forty-five days from the mailing date of the notice, the bond for deed shall be cancelled.
B. Where there is no mortgage or privilege existing upon the property, and the buyer shall be in default, the seller shall exercise the right of cancellation in the same manner.
Pursuant to the provisions of LSA-R.S. 9:2945, the proper method of canceling a bond for deed contract, upon nonpayment in accordance with its terms and conditions, is by initially serving proper notice on the buyer that unless payment is made as provided in the bond for deed within forty-five days from the mailing date of the notice, the bond for deed shall be cancelled. See Gaude v. Edwards, 360 So.2d 247, 250 (La.App. 1st Cir.1978). According to the jurisprudence, the provisions respecting the forty-five day notice are mandatory. Williams v. Dixie Land Co., 231 La. 834, 93 So.2d 185, 186 (1956); Farthing v. Neely, 129 So.2d 224, 230 (La.App. 3rd Cir.1961). The record contains no evidence that any such notice was given. Therefore, we deny the reconventional demand of the defendants.
We realize that our action puts the parties in a status quo position. However, we have addressed the prayers of the parties' pleadings, and we have no authority to take any further action based on the record before us. Further resolution of the legal issues remaining is dependant on the future legal steps taken by the parties.

Decree
For the foregoing reasons, the judgment of the trial court is reversed, and Tammy Seals' claims are dismissed. Because the *98 defendants' reconventional demand for judicial dissolution of the bond for deed contract, damages, and possession lacks merit, it is also dismissed. Costs of this appeal are assessed to Tammy Seals.
REVERSED AND RENDERED.
NOTES
[1] By this time, Seals and Harris had wed, but were living separate and apart. For purposes of this opinion, we will use her maiden name, Seals.
[2] Harris conveyed any and all interest he had in the property to Seals via agreement executed on August 14, 1995.
[3] L. & C. Sumrall Revocable Trust was named as a defendant based on Seals' belief that the Sumralls' Interest in the bond for deed contract had been assigned to it. The petition alleges that the bond for deed contract also contemplated the sale of a mobile home.
[4] This allegation is obviously in error because $40,617.85 less $36,000 equals $4,617.85. The alleged overpayment of $6,720.07 was derived by subtracting the principal of $33,897.78 in the 1995 contract from the total payments of $40,617.85.
[5] Relative to the July 1995 contract, Seals alleged that she was induced into signing this document based on representations that it was necessary to remove Harris' name from the transaction. She further asserted that the total shown as being owed in that contract was erroneous in that it did not give her credit for all of her prior payments.
[6] According to the defendants, in July 1995, Seals requested and arranged for the execution of a new contract that would exclude her husband from the transaction.
[7] See LSA-C.C. arts.2056 and 2057; Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183.
[8] Notedly, monthly and yearly "interest paid" statements were furnished to Seals.
[9] Cf. Monsur v. Thompson, 300 So.2d 655, 658-659 (La.App. 3rd Cir.), writ denied, 303 So.2d 187 (La.1974).
[10] The 1995 contract contains the same provision.
[11] Amounts paid by the buyer on the contract, as well as for taxes and insurance, together with improvements placed on the premises by the buyer, must be considered. Ekman, 169 So. at 522; Scott, 113 So.2d at 461; Thompson, 236 So.2d at 898-899.
[12] LSA-C.C. art.2013, effective January 1, 1985, reproduces the substance of LSA-C.C. arts.2046 and 2047 (1870).