## DAMBLY v. BURRELL.
### No. 1130.

Court of Appeal of Louisiana. First Circuit.
April 17, 1933.

Johnson & Kantrow, of Baton Rouge, for appellant.

Shelby Taylor, of Baton Rouge, for appellee.

ELLIOTT, Judge.

Mrs. Leontine A. Dambly, acting under the Revised Statutes, § 2155 (amended Act No. 55 of 1926), instituted summary procedure against Mrs. Will Burrell, who states that her correct name is Marie Burrell, with the view of ejecting her on account of the nonpayment of rent from a house and lot of ground which the plaintiff alleges she occupies as her tenant.

The defendant appeared and for answer, called by her an exception, alleges that the question of landlord and tenant had never existed between herself and the plaintiff. That plaintiff has no right to institute suit against her to dispossess her of her property. The plaintiff sold the property in question to her husband, Will Burrell, for the price and sum of $1,350. That he paid $50 in cash on the property at the time of the contract and that since then he had paid thereon the sum of $1,150. That her husband departed this life September 15, 1931. That the money paid on said contract was community funds. That her husband left no children. That the property was an asset of their community and, she being the owner of one half of the same, at the death of her husband became the owner of the other half by inheritance from him.

That at the proper time and in the proper suit, she will show that the contract whereby her husband bought the property was onerous and burdensome. That the price demanded of him was more than twice its real value. That she is entitled to have the sale set aside and the money returned to her as the widow in community of Will Burrell, deceased.

She prays that her exception be sustained. that the rule against her be dismissed, and for general relief in the premises.

After trial on the merits, judgment was rendered sustaining her exception, recalling the rule, and dismissing plaintiff's suit.

The plaintiff has appealed.

The evidence shows that Will Burrell entered into a written contract with the plaintiff bearing date July 22, 1926, for the purchase of, "One three room house and lot on the north side of Polk Street in the Eighth Ward. Said lot measures 30 feet width on the north side of Polk Street by a depth of

150 feet between parallel lines. This is the eastern 30 feet of lot No. —— Sq. No. ——," and which we assume must be situated in the city of Baton Rouge, although the pleadings do not so allege and the evidence is reticent on that subject. The contract entered into is not a sale as alleged by the defendant, but is a promise to sell on condition of being paid $1,350 in monthly installments with interest on installments not paid at maturity.

The judge a quo did not state his reasons for rejecting plaintiff's demand saving the formal statement in the judgment that the evidence was in favor of the defendant.

The promise to sell was made on condition that the contemplated purchaser should pay taxes in addition to the monthly installments on the purchase price. Fifty dollars was paid on the purchase price at the time the agreement was entered into, and the monthly installments were to be thereafter paid promptly. The stipulation on that subject was as follows: "The failure of the said purchaser to make any one of said payments promptly when due shall at the option of the said Mrs. L. A. Dambly and without demand or putting in default as a penalty immediately nullify and abrogate this contract, in which event all sums paid to said Mrs. L. A. Dambly shall be considered as rental for use of said property and any buildings or other improvements on said property shall remain and become the property of said Mrs. L. A. Dambly." The payments appear to have been credited on the back of the contract. A payment of $20 was made on October 1, 1926, and thereafter a payment was made by said Burrell each month but not on the same day and continued being made until his death, which took place September 15, 1931. Counting the $50 paid when the contract was signed and those entered on the back of the contract and the others entered in the book called the "rent book," we estimate that nearly $1,200 had been paid on this property at the time this suit was filed, not counting the amount paid in taxes as to which there is no evidence. This amount was paid during a period of about six years. Only a small portion of the total amount mentioned was paid by defendant after her husband's death.

The evidence shows that the defendant was the wife of Will Burrell. After his death, she continued to live in the house, to possess the property, and to make payments, but her payments were small and irregular and finally ceased, upon which plaintiff undertook to eject her as above stated. The defendant testifies that her payments were all made on the contract, but the plaintiff and Albert Ligon, her agent, testified that none of the payments made after the death of Will Burrell were made on the contract but were all made and received as rent. The plaintiff and Mr. Ligon, in support of their contention that after the death of defendant's husband

all payments received from her were received and paid as rent, point to the fact that all payments received after that time were entered in a small blue book called by them a "rent book."

According to their testimony, the defendant, after the death of her husband, by oral agreement with them, gave up and abandoned the contract and in paying understood that she was not paying on the property under the contract to sell but was paying rent under a verbal contract with them on the subject. That she agreed to pay $8.50 a month rent. That she ceased to pay rent and this suit to eject her followed. We quote a part of plaintiff's testimony on the subject. She says, referring to the arrangement which she claims she entered into with the defendant after the death of defendant's husband and to efforts which she says the defendant made to raise the balance due her under the contract and on which account she says she waited on the defendant for a period of time not clear, but which we estimate at between one and two months.

The plaintiff says: "I waited for that length of time but no money was brought so I went back and told her that she would either have to pay rent or find some other way to pay herself. So she said, 'Make the rent as easy as you can.' I said, $9.00 will be about right. She said, 'No,' and we hummed and hawed there until I told her that I would make it $8.50. She would pay a little something along * * *; I never kept account * * *; I knew the woman and Burrell were paying for that place. I knew her and never kept account but finally it got so she would not give anything at all. I never would have put her out during this proposition if she had not employed a lawyer. She sent me a letter and said she owed me about $200.00 and stood ready to pay me any time I would sign an act of sale. I brought the letter to Mr. Ligon and he knew she owed me more than that."

The letter to which the plaintiff refers was not written her by the defendant but by Mr. Taylor, defendant's attorney.

The plaintiff admits that the blue book called a "rent book," and which purports to show rent paid by the defendant after her husband's death, is all in the handwriting of the plaintiff or her agent.

Defendant as a witness, referring to a conversation with Mr. Ligon after the death of her husband, says that he told her that the best thing she could do was to give up the house; that if she wanted to, she could rent it for $8 or $9 per month. She testifies, however, that she never agreed to give up the contract which her husband had entered into with the plaintiff.

Asked referring to the payments she had made after her husband's death as to wheth-

er they were payments on the contract or as rent, she said:

"Q. That was on the contract or rent? A. Yes sir. I told him I would do the best I could."

She declares that she never consented that the payments she made might go as rent but, as we understand her testimony, she means that she paid in order to keep the house until she could get the contract straightened out. It appears that she made an effort to borrow the money to pay the balance due the plaintiff under the contract.

We do not doubt the testimony of the plaintiff and Mr. Ligon, her agent, nor mean to question their veracity. It is plain that their purpose was to have defendant abandon all claim to the property and to the payments made under the contract and agree to live in the house as plaintiff's tenant and pay rent as such, but it is not established to our mind that the defendant understood that she had relinquished her right to the property and to the payments that had been made thereon and had knowingly and understandingly made herself plaintiff's tenant and that her payments after her husband's death were rent for the house and lot.

To be legal, consent must be not only free, but it must be given in regard to a matter which the party understands. Civil Code, art. 1819. After having examined all the testimony on the subject, it is our conclusion that defendant did not understand that she had by oral agreement abandoned all her rights under the written contract which had been entered into between the plaintiff and defendant's husband and her rights to the amount and sum that had been paid thereunder and had by her continued occupancy of the house become plaintiff's tenant; that her payments after her husband's death were not payments on the property but payments of rent.

The contract between Will Burrell and the plaintiff was a commutative contract in which what was promised by Mrs. Dambly was as the equivalent for what was promised by Will Burrell but was subject to the resolutory condition provided for by Civil Code, art. 2046.

The contract in question seems to be exactly like that which was before this court in Pruyn v. Gay, 2 La. App. 787, and which was reviewed and set aside by the Supreme Court, 159 La. 981, 106 So. 536. The Supreme Court, applying to the contract the Civil Code, arts. 1901 and 1945, held that the contract had been legally entered into and that a contract legally entered into was the law of the case between the parties.

A similar question was before this court in the Succession of Premeaux, 17 La. App. 361, 135 So. 680. It is not our purpose to hold differently from what was held by the Supreme Court in the Pruyn Case or from our own opinion and decree in the Succession of Premeaux, but the period of time that elapsed between the time the present contract was entered into and the time when it is claimed it was abrogated was only about six years and the amount paid under the contract in the Pruyn Case was considered by the Supreme Court as not more than a fair rental value for the property which was the subject of the suit.

We quote the opinion of the Supreme Court in the Pruyn Case, page 987 of 159 La., 106 So. 536, 538: "That the payments made shall be considered as rental for the use of the property is not an inequitable or arbitrary stipulation. If defendant does not comply with his contract, he should pay a reasonable sum for his occupation of the property. In this case, the evidence shows that the amounts paid and forfeited by defendant do not amount to a fair rental for the property during the period of his occupancy." That question was not considered in the Premeaux Case.

In this case the evidence shows that the amount paid on the contract by defendant's husband and by herself after his death and received by the plaintiff is far more than a fair rental for the property during the time which elapsed after the contract was entered into until the payments ceased. In this case, according to the evidence, a fair rental value for the property in question would be say $8.50 or $9 a month. Now suppose the contract between Will Burrell and Mrs. L. A. Dambly to be nullified as a result of defendant's failure to pay the monthly installments promptly, a fair monthly rental from the time the contract was entered into until this suit was filed, and an accounting for all the sums paid including taxes would leave the plaintiff largely indebted to the defendant.

With this large amount due the defendant from the plaintiff, it would be inequitable for the plaintiff to eject her from the house and lot without first accounting to her for a just and equitable amount of the sum which the defendant and her husband have paid as a result of this contract. Until such an accounting has been had, we think that the defendant should be permitted to occupy the property as she has been doing.

For these reasons the judgment appealed from will be affirmed.

Judgment affirmed. Plaintiff and appellant to pay the cost in both courts.