129 So.2d 224 (1961)
Ernestine Colligan FARTHING
v.
Burkett S. NEELY et al.
No. 22.
Court of Appeal of Louisiana, Third Circuit.
January 30, 1961.
On Rehearing April 17, 1961.
Further Rehearing Denied May 9, 1961.
Certiorari Denied June 20, 1961.
*225 Plauche & Stockwell, by Oliver P. Stockwell, Lake Charles, for defendants-appellants.
Stuart S. Kay, DeRidder, for plaintiff-appellee.
Before TATE, FRUGE and SAVOY, JJ.
SAVOY, Judge.
This suit was instituted by Mrs. Ernestine Colligan Farthing against defendants husband and wife, Burkett S. Neely and Frances E. Neely, seeking the rescission, termination and cancellation of a bond for deed contract entered into between the parties on January 14, 1955, executed under the provisions of LSA-R.S. 9:2941 to 9:2947, and for a money judgment against defendants for the alleged difference paid by plaintiff on the contract and the fair rental of the property contracted to be sold.
To the suit defendants filed exception of no right of action, exception of no cause of action and non-joinder of proper parties plaintiff, the last plea being based on the fact that plaintiff's husband was not made a party plaintiff. The exception of non-joinder of proper parties plaintiff was maintained. Plaintiff amended her petition to make her husband, Woodrow N. Farthing, a party to the suit. Since he was an absentee, an attorney at law was appointed as curator ad hoc to represent him.
Defendants then filed an exception of improper articulation, which was overruled.
The trial judge referred all of the other exceptions to the merits.
Defendants filed an answer denying that plaintiff was entitled to a rescission of the contract, and then filed a reconventional demand praying for a specific performance of the contract and asked for a money judgment for the balance due on the contract, subject to a credit representing the proceeds of an insurance policy covering real estate destroyed by fire and located on the property described in the original contract.
During the course of the trial defendants filed two pleas of estoppel: (1) That plaintiffs moved on the property prior to the sale and were familiar with the property and the improvements thereon and due to the fact that they have made no effort to rescind the contract for any of the alleged causes set forth in their petition prior to demand for payment of past-due installments in January, 1957, they are estopped by their laches to urge any of these matters as grounds for rescinding said contract; and (2) that they are estopped to urge that the contract was cancelled by the actions of Mr. Neely due to the fact that Mrs. Farthing remained on the property, leased out portions thereof, and permitted others to use the property up to the time of the filing of this suit.
Plaintiffs likewise filed a plea of estoppel.
*226 After a hearing on the merits, the trial judge overruled the exceptions of no right of action and no cause of action and the pleas of estoppel, and rendered judgment in favor of plaintiffs, holding that the contract was mutually terminated on January 24, 1957, ordered defendant to pay plaintiffs a certain specified sum, and rejected the reconventional demand of defendants, plaintiffs-in-reconvention.
From this judgment defendants have appealed to this Court.
The bases for the individual contentions made by counsel for both plaintiffs and defendants are found in a series of letters written on behalf of their respective clients.
The evidence reveals that plaintiffs defaulted on the payment due on the contract on December 14, 1956. After Mrs. Farthing failed to make two monthly payments, Mr. Neely wrote plaintiffs a letter on January 18, 1957, advising that the back installments must be paid by January 21, 1957, or he would be forced to take some action to collect.
On January 19, 1957, Mr. Neely again wrote plaintiffs advising that they owed in excess of $200 for insurance and taxes and requesting that plaintiffs take care of this item in the near future. Mr. Neely wrote plaintiffs a third letter on January 24, 1957, stating that he was cancelling the contract and asked for possession of the premises at ten o'clock a. m., January 26, 1957.
On January 26, 1957, Mr. Neely arrived at the home of plaintiffs and had a conversation with Mrs. Farthing. He obtained permission from her to inspect the premises, stating that he wished to estimate the cost of repairing the buildings and improvements located thereon. He employed a person to work around the property for two or three days, but said employee left after Mrs. Farthing had asked Mr. Neely and his employee to leave.
On January 29, 1957, Mr. Neely's attorney wrote to plaintiffs advising that if the December, 1956, and January, 1957, installments, together with interest, insurance and taxes, were not paid that he would cancel the contract in accordance with Paragraph 7 thereof.
Paragraph 7 of the contract provided that if the purchaser failed to pay installments, plus interest, taxes and insurance for a sixty-day period, then the seller was granted the right to rescind the contract by giving notice either in person or by the U. S. mail.
On January 31, 1957, Mrs. Farthing's attorney wrote to Mr. Neely, stating that Mrs. Farthing demanded a nullification, rescission and dissolution of the contract entered into between the parties on January 14, 1955, because of certain false and misleading representations regarding the value of the property and the extent of the earnings of the store and filling station, and Mr. Neely's attempt to take possession of the property, having his employee make repairs and alterations upon the buildings, and stating further that Mr. Neely obligated himself to convey certain minerals whereas as a matter of record he did not own any minerals on a substantial portion of the land, and that the record title reflected other restrictions and conditions which made it impossible to deliver to the purchaser the unencumbered title stipulated in the contract.
On February 1, 1957, Mrs. Farthing's attorney wrote to the attorney for defendants another letter stating in part, "Although our clients each mutually charged the other with default, they seem to have the same objective in mind and this is rescission of the contract. * * * Please inform us what your client's position is in regard to restitution of money paid by my client in event they mutually terminate the contract, and she gives him the property back."
On February 3, 1957, Mr. Neely caused an advertisement to be carried in the Lake Charles American Press, advising that the property in litigation was for rent.
*227 Mrs. Farthing's attorney further wrote to counsel for defendants on February 12, 1957, stating in part, "On February 1st, we wrote you further regarding this matter, and we now repeat the position therein stated to the effect that although based upon different reasons, both parties have declared a cancellation and dissolution of the contract and therefore by their agreement, the contract is dissolved and at an end."
On February 27, 1957, Mr. Neely, through his attorney, wrote to counsel for plaintiff, Mrs. Farthing, to the effect that Mr. Neely had the right to terminate the contract for failure to pay the balance due, or had the right to sue for the full amount; that he elected to sue for the balance of the installments due.
There was no further correspondence between the parties and this suit was filed by Mrs. Farthing on June 11, 1957.
The trial judge held that there was a mutual cancellation of the contract between the parties, that this was permissible under the provisions of LSA-C.C. Articles 1901, 1945 and 2130, and the case of Noto v. Blasco, La.App., 198 So. 429.
LSA-C.C. 1901, 1945 and 2130 provide the following:
"Art. 1901. Agreements legally entered into have the effect of laws on those who have formed them.
"They can not be revoked, unless by mutual consent of the parties, or for causes acknowledged by law.
"They must be performed with good faith."
"Art. 1945. Legal agreements having the effects of law upon the parties, none but the parties can abrogate or modify them. Upon this principle are established the following rules:
"FirstThat no general or special legislative act can be so construed as to avoid or modify a legal contract previously made;
"SecondThat courts are bound to give legal effect to all such contracts according to the true intent of all the parties;
"ThirdThat the intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences;
"FourthThat it is the common intent of the partiesthat is, the intention of allthat is to be sought for; if there was a difference in this intent, there was no common consent and, consequently, no contract."
"Art. 2130. Obligations are extinguished:
* * * * * *
"By nullity or rescission * * *."
In the Noto case, supra, plaintiff entered into a contract with defendant, through defendant's agent, to purchase certain lots for a stated consideration. Plaintiff gave defendant's agent a check for $50 as a part payment on the property to be purchased. A short time after the above contract was entered into, defendant requested a release from the contract to sell the property, stating that he and his wife had decided they wanted to keep the lots and build a duplex on the lots for rent, and that they had no intention of selling these lots to anyone else. Plaintiff alleged that because of the earnest requests and solicitations on the part of the defendant, he agreed to and did release the defendant from his contract to sell the lots, whereupon the purchase price was returned to plaintiff. Shortly thereafter, defendant sold the lots which had been released to a third party. Plaintiff filed a suit for damages for the difference between the purchase price upon which plaintiff had agreed and the price for which they were sold by defendant to the third party.
The Court of Appeal held that while contracts legally entered into have the force and effect of law between the parties thereto, these contracts may be abrogated or revoked *228 by the mutual consent of the parties, citing LSA-C.C. Articles 1901, 1945, and 2130.
This Court is of the opinion that the Noto case, supra, is distinguishable from the case at bar in that the contract was mutually dissolved by the parties on the same subject matter, whereas in the case at bar, defendants are seeking to terminate said contract for non-payment of past-due installments, while plaintiffs are seeking to rescind said contract on other grounds, namely, misrepresentations as to the property in controversy, the inability of defendants to deliver minerals or royalties on a certain portion of the property, the placing of a mortgage by defendants on said property after the execution of the contract, and other related matters.
This Court is of the opinion that the case of Tharpe v. Tracy, La.App., 40 So.2d 509, 510, is more in point.
In the Tharpe case, supra, defendant entered into a contract with plaintiff, by reason of which plaintiff was accorded the exclusive right to list certain property owned by defendant for a stated consideration. The term of the listing was for a period of forty days. The contract contained the provision that should the property be sold to anyone to whom plaintiff had shown the property within six months after the expiration of the forty-day period, that plaintiff was to receive his commission. After the forty-day period had expired, plaintiff wrote defendant a letter stating that by mutual agreement the exclusive listing was terminated. A short time thereafter defendant sold the property to a third party. Plaintiff then filed the suit claiming a commission based on the original suit between the parties. Defendant filed an exception of no right of action. The district court maintained defendant's position and dismissed the suit. On appeal the Court of Appeal reversed the judgment of the lower court and said:
"There is no question as to the right of parties to an unexecuted commutative contract to abrogate or revoke such contract by mutual consent, and this proposition is well substantiated in this State. Article 1901 of the Civil Code declares that legal agreements can be revoked `by mutual consent of the parties'; Article 1945, dealing with the interpretation of agreements, confirms the right of the parties to `abrogate or modify' such agreements; and Article 2130, in enumerating the methods of extinguishing obligations, includes `recission' [sic].
"We cannot subscribe to the interpretation sought to be enforced by defendant that `termination' comprehends the same effect as would be implied by the terms `revocation', `abrogation', or `rescission'. Black on Rescission and Cancellation, Second Edition, Volume 1, Section 1, Page 1, points the distinction as follows: `To rescind a contract is not merely to terminate it, but to abrogate and undo it from the beginning; that is, not merely to release the parties from further obligation to each other in respect to the subject of the contract, but to annul the contract and restore the parties to the relative positions which they would have occupied if no such contract had ever been made.'
"We find a similar definition by the Supreme Court of Oklahoma in F. & M. Drilling Company v. M. & T. Oil Company, 192 Okl. 372, 137 P.2d 575, 577, as follows: `"Termination" or "cancellation" of a conditional contract means to abrogate so much of it as remains unperformed, doing away with an existing agreement upon the terms and with the consequences mentioned in the writing, and different from "rescission," which means to restore the parties to their former position.'
* * * * * *
"Reverting to the provisions of Article 1945 of the Civil Code with respect *229 to interpretation, we find that the fourth paragraph of the Article provides: `That it is the common intent of the partiesthat is, the intention of allthat is to be sought for; if there was a difference in this intent, there was no common consent and, consequently, no contract.'
"While the above rule of interpretation deals with the construction of contracts, we are convinced that it is equally applicable to the construction of agreements abrogating or modifying contracts. Viewed in this light there is no question as to the conclusion that the parties to this litigation were actuated by obvious differences of intent. The plaintiff by this suit has evidenced his construction of the agreement of `termination' in a manner entirely at variance with that of defendant, who proceeded to conclude this transaction within a period of little more than two weeks after the `termination' with the very party on the very terms that had been procured by plaintiff.
"With further reference to a consideration of the intention of the parties the following principle is noted in 17 C.J.S., Contracts, § 412, page 899: `Rights acquired under a contract may be abandoned or relinquished by agreement, conduct, or by a contract clearly indicating such purpose. To constitute an abandonment of rights, an actual intent to abandon must exist.'
"We can only conclude that in this instance there has been no rescission of the contract of August 20th by mutual consent, and consequently, the termination cannot be construed as having deprived plaintiff of those rights which had accrued to him prior to September 11th."
The next case cited by counsel for plaintiffs is that of Subdivision Realty Co. v. Woulfe, 17 La.App. 446, 135 So. 71. This case was decided in 1931 before the enactment of the bond for deed statute, namely, LSA-R.S. 9:2941 to 9:2947.
In the Subdivision Realty Company case, supra, plaintiff brought suit against defendant on a written contract or bond for deed for the sale of real estate and notes, maturing monthly, given as part of the purchase price for the property.
Defendant answered the suit admitting the execution of the contract but alleged that it had been cancelled by virtue of a letter written by plaintiff dated May 7, 1930, and a letter of defendant in reply thereto dated June 6, 1930, and that the notes sued on were without consideration and should be returned.
Defendant also filed a reconventional demand asking for the return of amount paid on the purchase price since plaintiff retained the land under contract because of the cancellation of same.
The contract sued on contained the provision that should the purchaser default in his payments on the notes, the seller could at his option declare the whole of said notes due upon giving the purchaser thirty days' notice by registered mail of his intention to exercise his option.
The letter of May 7, 1930, written by plaintiff to defendant referred to the paragraph of the contract as to default of payment on the notes and plaintiff stated that defendant was in default and the letter was written so as to give defendant thirty days under the contract to comply with the conditions thereof, and in default thereof plaintiff would retain the prior payments as liquidated damages.
Defendant, through counsel, wrote plaintiff on June 6, 1930, that the attempt by plaintiff to cancel the contract and retain the payments made was null and void in view of the decision in the case of Heeb et ux. v. Codifer and Vonnabel, Inc., 162 La. 139, 110 So. 178. Plaintiff wrote a letter to defendant on June 11, 1930, stating that the letter of May 7, 1930, inadvertently cancelled the contract and that *230 demand was being made by him for colleclection of the notes and execution of the contract. The district court held the contract void because of the liquidated damages clause. This was affirmed on appeal. The appellate court found plaintiff had invoked the thirty days cancellation clause in the contract and that the defendant acceded to the cancellation.
Following the decisions in the Heeb et ux. and Subdivision Realty Co., cases, supra, the Legislature adopted Act No. 169 of 1934 dealing with bond for deed contracts. This act is re-enacted as LSA-R.S. 9:2941 to 9:2947.
As stated previously in this opinion, under Paragraph 7 of the contract, defendants could not cancel the contract for a period of sixty days after default on any installment. Plaintiffs defaulted on the payment due December 14, 1956. Defendants could not cancel said contract until February 14, 1957.
In addition to the sixty days mentioned above, defendants had to send a registered letter to plaintiffs notifying plaintiffs of their intention to cancel said contract and said cancellation could not be effected by plaintiffs for 45 days from the date of mailing under LSA-R.S. 9:2945. The provisions of LSA-R.S. 9:2945 are mandatory. Williams v. Dixie Land Co., 231 La. 834, 93 So.2d 185. This provision of law would have extended the time in which defendants could have cancelled the contract to April 1, 1957. This case is distinguishable from the Subdivision Realty Company case, supra, in that the letter written by defendants on January 24, 1956, was premature, no mention was made of the cancellation clause of the contract in the letter, and it was not sent by registered mail, whereas in the Subdivision Realty Company case, supra, plaintiff invoked the cancellation clause in his letter of May 7, 1930, and the notice of cancellation was not premature because there was no waiting period provided in the contract before cancellation of the contract could be invoked, as is found in the case at bar, and LSA-R.S. 9:2945 was not in existence then. Defendants also agreed on a mutual cancellation on the same subject, which is not the case here.
Before the time in which defendants could have legally cancelled the contract, plaintiffs wrote defendants the letter of January 31, 1957, seeking nullification, rescission and dissolution of the contract on grounds of misleading representations, interfering with plaintiffs' possession of the property, and other matters than that stated in defendants' letter to plaintiffs of January 24, 1957.
The letter written by defendants to plaintiffs on January 24, 1957, was without legal effect to the reasons enumerated herein, and hence, did not terminate the contract between the parties.
Considering all of the factors in this case, this Court is of the opinion that the lower court was in error in determining that the parties to the bond for deed contract had by mutual agreement cancelled said contract.
Having concluded that there was no mutual termination of the original bond for deed contract, this Court will next discuss the grounds set out by plaintiffs for rescinding said contract, to wit:
1. By forceful entry upon the property and disturbance of possession as set forth in Paragraph 13 of the petition.
2. The property is encumbered with a servitude or easement in favor of Long-Bell Farm Land Corporation for the establishment of such public roads thereon as it sees fit without compensation.
3. The property is encumbered with a restriction against sale or conveyance to any person not of the Caucasian race.
4. Subsequent to the execution of the contract aforesaid, the seller executed and recorded a conventional mortgage dated January 24, 1955, in favor of themselves or any future holder in the principal sum of $5,000, which is recorded in the Mortgage *231 Records of Beauregard Parish, Louisiana, under instrument number 119017 and in Mortgage Book 59, Page 177, which operates as a lien, privilege and encumbrance against the property covered by the contract of January 14, 1955, and without compliance with R.S. 9:2941 et seq.
5. Seller did not at the time of the execution of the contract and does not now own any mineral rights under the property.
Forceful Entry upon the Property and Disturbance
 of Possession, as Set Forth
 in Paragraph 13 of the Petition.
The evidence discloses that Mr. Neely went on the Farthing property with the full consent of Mrs. Farthing to make certain repairs on the premises. He and an employee worked on the premises for several days and left the premises as soon as they were requested to do so by Mrs. Farthing. We find no merit for cancelling the contract on this ground.
The Property Is Encumbered with a Servitude
 or Easement in Favor of Long-Bell
 Farm Land Corporation for the
 Establishment of Such Public Roads
 Thereon as It Sees Fit without Compensation.
In support of his second ground for setting aside the contract, counsel for plaintiffs cites the cases of Couret v. Hopkins-Rhodes & Co., 13 Orleans App. 161; Hebert v. Vezoux's Succession, 12 La.App. 624, 126 So. 461, Bolian v. Porche, La.App., 149 So. 272, and Williams v. Meyer, La. App., 29 So.2d 599. An examination of these cases reflects that the Court found in each instance the purchaser was unaware of the restrictions in said deeds. In the case at bar, the bond for deed contract provides that certain roadways may be established by the Police Jury of the parish. Plaintiff having signed the contract is presumed to have read same and is bound by the terms thereof. This objection is equally without merit.
The Property Is Encumbered with a Restriction
 against Sale or Conveyance
 to Any Person Not of the Caucasian
 Race.
The restriction that the property could not be sold to any person not a member of the Caucasian race was nullified by the United States Supreme Court in the case of Barrows v. Jackson, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586.
Subsequent to the Execution of the Contract
 aforesaid, the Seller Executed
 and Recorded a Conventional Mortgage
 Dated January 24, 1955, in Favor
 of Themselves or Any Future Holder
 in the Principal Sum of $5,000 Which
 Is Recorded in the Mortgage Records
 of Beauregard Parish, Louisiana, under
 Instrument Number 119017 and in
 Mortgage Book 59, Page 177, Which
 Operates as a Lien, Privilege and Encumbrance
 against the Property Covered
 by the Contract of January 14,
 1955, and without Compliance with
 R.S. 9:2941, et Seq.
The bond for deed contract was dated January 14, 1955, and filed for record in Beauregard Parish on January 18, 1955. Subsequent to the contract between the parties, defendants granted a mortgage on the property in question and the note was made payable to themselves or any future holder. The note was transferred to the City Savings Bank and Trust Company, DeRidder, Louisiana. The mortgage was dated January 24, 1955, and was filed for record in the Mortgage Records on January 24, 1955. Plaintiffs were aware of the mortgage executed by defendants and did not complain of same. The mortgage in question could not affect the bond for deed contract for the contract was recorded prior to the mortgage. If the bank had been forced to foreclose on said mortgage and had acquired the property at sheriff's sale, it would have been obligated to carry out the provisions of the contract between the parties to this suit. We conclude that this is not a ground for rescinding the contract.
*232
Seller Did Not at the Time of Execution
 of the Contract and Does Not Now
 Own Any Mineral Rights under the
 Property.
The bond for deed contract contained a stipulation that the conveyance of the property when executed would contain a mineral reservation in favor of the seller and that the seller would transfer to the purchaser a 1/64th mineral royalty interest. The evidence shows that this was explained to the plaintiffs prior to their signing the bond for deed contract.
The evidence reflects that on an eighty-acre tract of the property described in the contract, defendants did not own any minerals at the time of the execution of said contract. This court does not feel that this would warrant the rescission of the contract. The transfer of the royalty was conditional upon plaintiffs paying the full purchase price of the property and also upon their paying accrued interest on said indebtedness, together with insurance and taxes. Under the terms of the contract, if plaintiffs paid all of the installments as set forth therein, they would have acquired the property in twenty years, or in 1975. It is very probable that in that long period of time that the minerals on the eighty-acre tract would revert back to the Neelys. Until all of the installments were paid, defendants were under no obligation to transfer said royalty interest. The argument advanced by counsel for plaintiffs is premature at this time.
Having concluded as we have, there is no necessity to discuss the pleas of estoppel filed by plaintiffs and defendants.
For the reasons assigned, the judgment of the trial court is reversed and judgment is now rendered in favor of Burkett S. Neely and Mrs. Frances E. Neely, and against Mrs. Ernestine Colligan Farthing and Woodrow N. Farthing, decreeing a specific performance of the bond for deed contract dated January 14, 1955, and granting defendants judgment against plaintiffs in solido, in the full and true sum of $22,338.27, with six per cent per annum interest from December 14, 1956, until paid, together with fifteen per cent as attorney's fees on the principal and interest, subject to a credit made on November 25, 1957, of $9,500, and recognizing defendants' lien and privilege on said property described in the bond for deed contract, dated January 14, 1955, to secure the balance thereon, and that simultaneously upon the payment of the judgment herein in full, defendants shall convey to plaintiffs the following described property situate in the Parish of Beauregard, State of Louisiana, to wit:
North Half of Northwest Quarter (N ½ of NW¼) of Section Twenty (20), Township Five (5) South, Range Eight (8) West; North Half of North Half (N½ of N½) of Section Nineteen (19), Township Five (5) South, Range Eight (8) West, Louisiana Meridian.
Plaintiffs are to pay all costs of court in the district court and on appeal.
Reversed and rendered.
TATE, Judge (dissenting).
Feeling that the trial court correctly held that the "bond for deed" contract[1] of January 14, 1955 had been cancelled by both parties, I respectfully dissent from the majority's opinion reversing such judgment. Our trial brother correctly, in my opinion, as a result of this cancellation awarded to the plaintiff the return of all sums paid by her to the defendant, subject however to a credit by which the defendant kept the fair rental value of the premises during her occupancy of it and the fair market value of any movable goods upon the property which *233 had been sold by her. See Scott v. Apgar, 238 La. 29, 113 So.2d 457.
Before commenting on the facts of this particular instance, it should be added that the "bond for deed" contract, in which title is not delivered until final payment of the last installment, puts the buyer at so much disadvantage and has been so abused by sellers as to cause both legislative regulation (see Act 169 of 1934, LSA-R.S. 9:2941 et seq.) and also judicial condemnation of confiscatory clauses thereof (see, e. g., Scott v. Apgar, above-cited). See Professor J. Denson Smith's brief comments in "Work of the Supreme CourtParticular Contracts", 18 La.L.Rev. 43 (1957), 46.
Before Mrs. Farthing missed for the first time a payment on the contract on December 14, 1956, following abandonment of her and her four children by her husband, she had paid to the defendant a total of $15,000 ($7,882.27 being represented by Lake Charles property transferred to the defendant). Upon her missing the second installment on January 14, 1957, the defendant wrote her by letter of January 24, 1957, cancelling the contract, as follows:
"I am this day, January 24, 1957, cancelling contract and ask for the possession of place by Saturday, 10 A.M., January 26, 1957." (P-4, Tr. p. 78.)[2]
As the trial court found, the defendant then proceeded upon the assumption that he had effectively cancelled the contract. He came upon the premises on January 26 with a repairman, who made certain repairs during the next two or three days and who testified as the defendant's witness at the trial. (This disinterested witness admitted that the defendant told the delinquent purchaser that the latter would either have to pay the arrears or surrender the property. Tr. 253.) The seller placed a "for rent" sign on the premises and advertised it for rent in the Lake Charles paper. The repairman did leave the premises three days later at the plaintiff's request, she having in the meantime learned that her substantial payments could not be so casually declared forfeited, but as can be seen from the letters by her attorney, referred to below, her position was not that the defendant was not entitled to possession of the premises, but rather that he was not entitled to such possession until he had settled her substantial claim for restitution.
Upon having the workman ordered off the premises, the defendant then sent through his attorneys a second letter dated January 29, 1957 by registered mail to the delinquent buyer, which letter stated:
"This is to advise that you have failed to pay the installment due December 14, 1956, in the amount of *234 $209.84 with interest, and the installment due January 14, 1957, in the amount of $209.84, with interest plus insurance and taxes in the amount of $203.61.
"This is to advise that should you fail to make payment that we have been advised by Mr. Burkett S. Neely that he will cancel the contract in accordance with paragraph 7 thereof." (P-6, Tr. p. 81.)
This second letter was obviously intended to comply with the provisions of LSA-R.S. 9:2945, enacted for the protection of delinquent buyers:
"If the buyer under a bond for deed contract shall fail to make the payments in accordance with its terms and conditions, the seller, at his option, may have the bond for deed cancelled by proper registry in the conveyance records, provided he has first caused the escrow agent to serve notice upon the buyer, by registered mail at his last known address, that unless payment is made as provided in the bond for deed, within forty-five days from the mailing date of the notice, the bond for deed shall be cancelled. Where there is no mortgage or privilege existing upon the property, and the buyer shall be in default, the seller shall exercise the right of cancellation in the same manner. The fee of the clerk of court for the registry of the cancellation shall not exceed the legal rate per hundred words fixed for conveyance registries."
At this point, it is well to note, the defendant seller had done all required by the contract or by statute to cancel the contract. His undoubted purpose was to do so and also to invoke the clause that he retain all of the substantial payments previously made by the buyer. At this point, there was only one thing Mrs. Farthing, the plaintiff, could do in order to avoid cancellation of the contract, a right provided by the above-quoted remedial statuteto make payment "as provided in the bond for deed" (see LSA-R.S. 9:2945), which contract in her case also included an acceleration clause maturing the entire unpaid balance of the contract of bond for deed;[3] which acceleration clause had not yet been invoked, it should be added in fairness to the seller.
Mrs. Farthing did not attempt to avoid the cancellation of the deed. Instead she retained an attorney who on her behalf also urged cancellation of the deed and, for the first time by letter of January 31st, advised the defendant of Mrs. Farthing's rights for substantial restitution. In short, by this and subsequent letters from her attorney she acceded to the defendant's demand for cancellation, urging however her substantial rights for restitution (subject to the defendant's credit for the fair rental value of the premises during her occupancy) and tendering immediate possession to him upon the settlement of such substantial rights.
I think, thus, that the contract was cancelled by the action of the seller in exercising his option to do so under the terms of the contract and as permitted by statute. Actually, the purchaser's consent to this cancellation was not required either by the contract or the protective statute; but, in any event, the purchaser did not contest this cancellation but rather acceded to it.
Having effectively exercised his option to declare the contract cancelled, subject only to Mrs. Farthing's right to avoid such cancellation by paying the delinquent amounts on the contract, the defendant *235 seller in my opinion is not entitled later to seek the inconsistent remedy of a judicial decree ordering specific performance of the contract.
Aside from the substantial jurisprudence that specific performance of contracts cannot be claimed as an absolute right but rests within the discretion of the court (see LSA-Civil Code Article 1926, annotation 16; LSA-Civil Code Article 1927, annotation 16; 17 West's Louisiana Digest, Verbo Specific Performance, it was specifically held in Subdivision Realty Co. v. Woulfe, La.App. Orleans, 17 La.App. 446, 135 So. 71, in a case concerning facts substantially identical with the present and with specific reference to a bond for deed contract, that, 135 So. 73:
"The plaintiff, having exercised the option to cancel the contract, which was acceded to by defendant, cannot thereafter change its position and in a subsequent proceeding ask for the enforcement of a contract which it had preciously canceled in accordance with its provisions."
(The decisive force of this holding by our brothers of the Orleans Court, with whom we differ by the present decision, is not in my opinion lessened by the circumstance that the Woulfe case was decided before the enactment of Act 169 of 1934, LSA-R.S. 9:2941 et seq., which provided further protections for the buyer in a bond for deed contract.)
Applying this holding to the instant case, the seller, having exercised his contractual option to rescind the contract, could not subsequentlyafter discovering that the buyer had retained an attorney and would prevent him from accomplishing his intended forfeiturethrough his letter of February 27th exercise another and inconsistent contractual option to declare the entire balance due and to demand specific performance of the contract.
By letters of January 31, 1957 (P. 7; Tr. 82) to the defendant, and of February 12, 1957 (P. 8; Tr. 84) and February 26, 1957 (P. 9; Tr. 86) to the defendant's attorney, the plaintiff through her attorney tendered possession of the premises to the defendant upon his repayment of the substantial amounts owed to her by reason of the defendant's cancellation of the contract but "less the fair rental value of the property for the time she has possessed it" (Tr. 84), indicating her willingness to discuss "any other equitable adjustments to be made." Under the circumstances of this tender and the defendant's refusal to consider reimbursing her, I do not think that this abandoned wife, with four children to feed, waived any rights she possessed by renting the house on the property to two soldiers for $25 per month for about four months after the defendant had cancelled the lease.
Before concluding, I do not think it inappropriate to comment briefly concerning the remedy of "specific performance" awarded the defendant seller, who is awarded judgment for the full unpaid balance of the note (subject to a credit for $9,500, the insurance proceeds of the residence on the property, which burned down) of $22,000, plus four years' interest at six per cent per annum, plus fifteen per cent attorney's fees.
Unlike the situation that would have arisen had this been a judgment for the unpaid purchase price of the land secured by mortgage and vendor's privilege, the present purchaser under a bond for deed contract does not have available to her, as a credit against the amount of the judgment, her equity in the land, subject to forced sale only after appraisal and other judicial guarantees of fairness. Under the majority decree, she has only the right to receive title to the land after paying in full this substantial judgment. Her rights in the bond for deed contract can be seized and sold under this judgment for a nominal price, despite the fact that they represent an investment of approximately $15,000 towards the purchase of the land; and still leaving her subject to a deficiency judgment for almost the entire unpaid balance.
*236 It seems to me that the remedy of "specific performance" in favor of the seller under a bond for deed contract that we have awarded is so one-sided a remedy in favor of the seller as to be an unconscionable forfeiture no less violative of the laws and public policy of Louisiana than the forfeiture clause itself of the bond for deed contract, see Scott v. Apgar, above-cited. If specific performance is available at all, which I doubt as before-stated, it seems to me that possibly the seller should be ordered to convey the land as well as receive a judgment for the unpaid purchase price, so that both parties be required to perform their part of the contract; the seller then being protected by having a judgment for the full unpaid price of the land secured by a vendor's privilege thereupon, the buyer then having the usual statutory and judicial protections against arbitrary forfeiture of her equity by the necessity of the safeguards of a judicial sale in event of the execution of the judgment.
But it is unnecessary to discuss further the inappropriateness of the remedy of specific performance as decreed, however, because for the reasons above stated I disagree with my conscientious brethren of the majority that we should reverse the trial court's holding that the bond for deed contract was cancelled through the exercise of such option by the seller, acceded to by the purchaser, with the usual legal consequences attendant upon such cancellation.
For the above reasons I respectfully dissent.

On Rehearing.
Before TATE, FRUGÉ, SAVOY, CULPEPPER and MILLER, JJ.,
TATE, Judge.
In our original opinion we ordered specific performance of a bond for deed contract executed between the plaintiff, as purchaser, and the defendants, as sellers, of certain property situated in Beauregard Parish. On rehearing, we have reached the conclusion that the defendants are not entitled to specific performance because the parties had by their mutual consent rescinded the contract before the defendants demanded its specific performance.
The original opinion of this court includes a very complete statement of the facts of the litigation, which therefore will not be repeated except as necessary for the clarity of this opinion.
As noted in our original opinion, in January of 1955 the plaintiff, as purchaser[1] entered into a bond for deed contract, see LSA-R.S. 9:2941 to 9:2947, with the defendants, as sellers.[2] By this agreement, possession of two hundred forty acres of land, together with improvements and certain merchandise and cattle, were transferred to the plaintiff in consideration of a down payment of nearly $11,000, together with the purchaser's agreement to pay the balance of slightly over $24,000 in monthly installments of $100 plus interest. Upon completion of payment of the purchase price, final title was to be transferred to the plaintiff.
The plaintiff regularly paid her monthly installments for almost two years, but she defaulted in the payment due on December 14, 1956. Without repeating in detail the subsequent actions and correspondence of the parties, we deem it sufficient *237 to note that the defendant seller by letter of January 24, 1957, unequivocably stated "I am this day, January 24, 1957, cancelling contract and ask for the possession of the place * * *", which position was reiterated by registered letter of the defendants' attorney dated January 29, 1957 advising the plaintiff that, should she fail to pay the delinquent installments, the defendant seller "will cancel the contract in accordance with paragraph 7 thereof."[3] This reiterated demand by the seller for cancellation of the bond for deed contract was not withdrawn until February 27, 1957, when for the first time the defendant seller, through his attorney, advised the plaintiff's attorney that he intended to sue for the balance of the installments, rather than to cancel the contract, unless the delinquent installments were brought up to date.
Before this last date, however, the plaintiff through her attorney had by letter of February 12, 1957 acceded to the defendant seller's request for the cancellation of contract, stating that "both parties have declared a cancellation and dissolution of the contract and therefore, by their agreement, the contract is dissolved and at an end." The plaintiff then offered to deliver possession of the premises upon his repayment to the plaintiff of the amounts she had paid under the contract "less the fair rental value of the property for the time she has possessed it" and "any other equitable adjustments." This position was again reiterated by letter of plaintiff's attorney dated February 26, 1957.
Thus, as of February 26, 1957, the defendant seller had elected to cancel the contract pursuant to a contractual option, and the purchaser had acceded to such termination.
Under identical circumstances, our brothers of the Orleans Court of Appeal held in Subdivision Realty Co. v. Woulfe, 17 La.App. 446, 135 So. 71, that the seller "having exercised the option to cancel the contract, which was acceded to by defendant [purchaser], cannot thereafter change its position and in a subsequent proceeding ask for the enforcement of a contract which it had previously cancelled in accordance with its provisions." 135 So. 73. Upon reconsideration, we have decided to follow this decision as determinative of the present question. We therefore find that by mutual consent the bond for deed contract was cancelled by the parties to it, so that thereafter the seller cannot change his position, after being unsuccessful in his attempt to accomplish an illegal forfeiture under the terms of the contract, and attempt then to enforce the contract previously cancelled through his action.
In our original opinion we felt that the Woulfe decision might be distinguishable because decided before the enactment of Act 169 of 1934, LSA-R.S. 9:2941 et seq., which provides, inter alia, that the seller may not cancel a bond for deed contract unless he has first given the buyer at least forty-five days notice by registered mail, LSA-R.S. 9:2945. Our further consideration has convinced us that, as the jurisprudence recognizes, this legislation was enacted primarily to protect the buyer[4]; so that, although mandatory insofar *238 as preventing the seller from cancelling a contract without such notice, the seller cannot complain that his attempted cancellation, acceded to by the buyer, is void because the full protective term of forty-five days statutorily allowed to the buyer has not been demanded by the latter.
Tharpe v. Tracy, La.App. 2 Cir., 40 So. 2d 509heavily relied upon by the defendants-appellants and discussed by us in our original opinionis distinguishable from the present situation. There, the agreement was held not to have been terminated because there was no mutual consent or understanding that the agreement was to be totally terminated. Here, there was mutual agreement that the agreement be completely rescinded or terminated, although the parties may have differed in their awareness of the legal consequences of the termination of the contract.
Able counsel for the defendants-appellants also contends that the plaintiff is estopped from contending that the bond for deed contract is rescinded because for several months after January, 1957, or until May of 1957 when the residence burned down, she collected $25 per month rent from two tenants under the premises. (She had also, prior to the delinquency in December of 1956, collected $120 rent for a year's use of the pasture by a neighbor.) As noted also, she was in fact still residing in her trailer on the property when this suit was filed in June of 1957 and did not leave it until July 1, 1957.
However, following February 12, 1957, when the contract was mutually terminated, the plaintiff has formally and consistently tendered possession of the property to the defendant, subject to the defendant's repayment of sums owed to her less a credit for amounts owed by him to her (see, e. g., Art. 14, plaintiff's petition). The jurisprudence has held that the seller under a bond for deed contract may not evict the buyer from the premises following termination of the contract without accounting to the buyer for sums paid under the contract. Ekman v. Vallery, 185 La. 488, 169 So. 521; Dambly v. Burrell, La.App. 1 Cir., 147 So. 711. Further, the defendant seller never demanded and was refused possession of the premises following such date, and equitable estoppel is not permitted in the absence of detrimental reliance or change of position as a result of omissions or commissions of the person sought to be estopped. Breaux v. Laird, 230 La. 221, 88 So.2d 33; Eaton v. Eaton, 227 La. 992, 81 So.2d 371; In re Clover Ridge Planting & Mfg. Co., 178 La. 302, 151 So. 212. (It is also to be noted that the defendant seller is being allowed a fair rental value for the premises during the entire period of plaintiff's occupancy of the premises, both before and after the termination of the contract.)
We thus find that the bond for deed contract was rescinded by the seller with the consent of the buyer and that therefore, under the jurisprudence, the buyer is entitled to a return of all payments made by her under the contract, less however the fair rental value of the property during her occupancy thereof and less also any other actual loss beyond reasonable wear and tear occasioned by the buyer's occupancy of the property. See Scott v. Apgar, 238 La. 29, 113 So.2d 457, and cases therein cited.
The defendant contends that the trial court did not allow him sufficient credit against the return of the sums paid to him by the plaintiff, if the contract is rescinded; while the plaintiff has answered the appeal to request an increase in the net award.
The total consideration paid to the defendant by the plaintiff under the contract was the sum of $15,619.56.
*239 Despite contrary contentions by the respective parties, after analyzing the evidence, we find that the trial court correctly allowed the defendant a credit of $800 for the value of store merchandise in the country store on the property, and of $2,150 for the value of cattle; all of which had been transferred to the plaintiff under the terms of the bond for deed contract and have since been sold by her. We think that the trial court correctly valued them as of January, 1955, the date of the transfer between the parties.
Included also in the sale were 200 parakeets, which the evidence reflects to have had a value of $3 each at the time of the transfer. The trial court allowed only $400 credit for this item, since some of the birds died after the transfer; but we think that the correct credit to allow is $600, their full value as of the date of the transfer. The decree will therefore be amended to allow the defendant an additional credit of $200 against the sum he is obliged to return to the plaintiff.
Likewise, we find no error in the trial court's allowance of a credit of $150 per month during the plaintiff's occupancy of the premises as a fair rental value thereof, or until July of 1957 when she moved from the premises; being a total of 30 months, and a total credit of $4,500. Defendant's expert realtor testified that $150 monthly was the fair rental value of the premises, and we are cited to no authority which would permit the defendant seller to receive rental credit after the plaintiff ceased to occupy the premises after the bond for deed contract had been mutually cancelled.
The final offset credit claimed by defendants is the sum of $5,600 for the alleged damages caused to the improvements (a store building, a tenant house, two barns, the fences, etc.) on the premises during the plaintiff's occupancy. The trial court disallowed this item entirely as not proved by the evidence. The only somewhat detailed evidence as to these damages was based from observation of the property after substantial damage was done to it by Hurricane Audrey in June of 1957. The trial court concluded: "It is impossible to determine from the evidence whether these repairs became necessary because of the storm, because of age, wear, tear, general deterioration in the elements, or whether any of such repairs were occasioned by the negligence or willful acts of plaintiff."
While we are in general accord with these observations by the trial court, nevertheless we feel that there is preponderant evidence that, due to the plaintiff's neglect during her occupancy, there was substantial deterioration and little maintenance of the improvements.[5] On the other hand, none of this evidence is sufficiently detailed so as to place any precise monetary estimate of these damages.
Due to the subsequent substantial destruction caused by the hurricane, it is now beyond the power of the defendant to produce such precise proof of this undoubted damage caused to the property by the plaintiff. However, "In cases where although there is a legal right to recovery, an exact estimation of damages cannot be made, courts have discretion to assess same based upon all the facts and circumstances of the case, see, for instance, Brantley v. Tremont & Gulf Railway Company, 226 La. 176, 75 So.2d 236." Harrison v. Petroleum Surveys, La.App. 1 Cir., 80 So.2d 153, 158. See also Sutherlin Sales *240 Co. v. United Most Worshipful, etc., La. App. 4 Cir., 127 So.2d 253. Under all the circumstances of this case, we think therefore that an award of $1,000 for the damages undoubtedly caused by the plaintiff to the property would do substantial justice between the parties and should be allowed as a further credit.
In summary, against the $15,619.56 paid by the plaintiff which the defendant is obliged to return because of cancellation of the contract, the latter is entitled to credit for the following amounts: $800 (merchandise); $2,150 (cattle); $4,500 (fair rental value); $600 (parakeets); and $1,000 (damages); for a total credit of $9,050. The plaintiff is thus entitled to a net judgment of $6,569.56.
For the foregoing reasons, our original decree herein is recalled and set aside; the judgment of the district court is amended so as to allow the defendants an additional credit of $1,200, so as to reduce the judgment in favor of plaintiff to the sum of $6,569.56, together with legal interest; and said judgment is affirmed in all other respects, including its cancellation of the contract for deed between Burkett S. Neely and Frances E. Neely, born Toye, and Mrs. Ernestine Colligan Farthing, dated January 14, 1955, filed for record in this office on January 18, 1955 under file No. 118969, and duly recorded in Conveyance Book 131 at page 100 et seq. thereof, records of Beauregard Parish, affecting the following described property:
North Half of Northwest Quarter (N½ of NW¼), of Section Twenty (20), Township Five (5) South, Range Eight (8) West; North Half of North Half (N½ of N½) of Section Nineteen (19), Township Five (5) South, Range Eight (8) West, La. Mer., Beauregard Parish, Louisiana.
The defendants are assessed with all costs of these proceedings. The right of all parties to this appeal to apply for further rehearing is specifically reserved.
Amended and affirmed.
FRUGE and SAVOY, JJ., dissent for reasons assigned in original opinion.

On Application for Further Rehearing.

En Banc. Rehearing denied.
FRUGE and SAVOY, JJ., dissent from refusal to grant a rehearing.
HOOD, J., recused.
NOTES
[1] See LSA-R.S. 9:2941: "A bond for deed is a contract to sell real property, in which the purchase price is to be paid by the buyer to the seller in installments and in which the seller after payment of a stipulated sum agrees to deliver title to the buyer."
[2] This letter was an obvious attempt to invoke the provisions of Clause 7 of the bond for deed contract, entitled "Default for Sixty Days; Effect of," which provided:

"(7) The purchaser agrees that the time herein stipulated for the payment of the installments, plus interest, and the taxes and insurance, is of the essence of the contract, and if the Purchaser defaults in the payment of any of said installments, or in the payment of taxes and insurance on said property, or if the purchaser defaults with respect to any other covenants contained in this contract, and said default in either continues for sixty (60) days, then, in such event, the Seller shall have the right to rescind this contract. If Seller elects to rescind the contract, Seller may do so with no formality other than giving notice thereof, which notice may be given either (a) to the Purchaser in person, or (b) by letter duly posted in the United States mail to the Purchaser at her place of residence as fixed in this contract, or as at that time registered with the Seller, or at her last known post office address; and thereupon the title to said land shall be free from any and all claims by the Purchaser, her heirs, or assigns; the possession of said premises shall be peaceably surrendered by the Purchaser to Seller; and the amount previously paid by the Purchaser shall be retained by the Seller as stipulated and liquidated damages, and for the use of said property." (Tr. p. 127.) The italicized forfeiture clause has been held invalid as against the public policy and statutes of the State. See Scott v. Apgar, supra cit.
[3] See Tr. 18, Clause 2(c) of Contract for Deed:

"* * * In the event that Purchaser should be in default in the payment of any monthly installment for more than sixty (60) days, the whole of the remaining installments immediately, at the option of the Seller, to become due and payable. If it is necessary for Seller to place the collection of the remaining installments in the hands of an attorney, then Purchaser agrees to pay as attorney's fees fifteen per cent (15%) of the amount due."
[1] The plaintiff purchased the property with her separate funds for her separate and paraphernal estate. Her husband, who was made party to the suit, did not appeal from the trial court judgment decreeing that he had no interest in the property or in the return of the proceeds paid pursuant to the bond for deed contract, since these were his wife's separate property.
[2] The defendants are husband and wife, the latter being joined since she as well as her husband had signed the bond for deed contract. The husband, Mr. Neely, is the principal defendant and hereinafter references to the "defendant" in the singular shall refer to him only.
[3] Under paragraph 7 (which is set forth in full at footnote 2 to the dissent to the original opinion), the seller was entitled to rescind the contract upon any default in payment continued for more than sixty days, by simple oral or written notice to the purchaser; with the seller also having the right to retain as liquidated damages all sums previously paid by the purchasera forfeiture provision consistently held invalid by our courts as against the public policy and statutes of our State, see Scott v. Apgar, 238 La. 29, 113 So.2d 457.
[4] See Professor J. Denson Smith's comment at Louisiana Law Review 46 (1947): "This legislation recognized that purchasers under such contracts are generally not as well informed as are sellers nor, consequently, as qualified to protect themselves against sharp practices, and is aimed at giving them a degree of protection that their situation demands."
[5] The plaintiff herself admitted, for instance, that due to deterioration and leakage of the residence roof, she and her children had moved from it into a trailer before the hurricane. While the defendant cannot recover for residence damage, since a fire insurer paid him the full value thereof when it burned in May of 1957, this evidence is indicative of the general state of disrepair of the premises.